# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Betty, Inc.

          Plaintiff,

      v.

PepsiCo, Inc.

          Defendant.

**Case No. 7:16-CV-04215 (VB)**

---

**DEFENDANT PEPSICO INC.'S REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**PURSUANT TO LOCAL RULE 56.1**

Defendant PepsiCo, Inc. ("Pepsi") submits their Reply Statement of Material Facts. Defendant replies to Plaintiff's responses set forth in their Responses to Defendant's Statement of Undisputed Material Facts in Part I and to Plaintiff's "Statement of Additional Material Facts" in Part II.

PART I

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSES IN SUPPORT OF**

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Plaintiff does not dispute paragraphs 1-8, 13, 14, 16, 18, 20, 30, 33, 35, 37, 40-42, 44, 47, 51, 55, 61, 63-65, 70, 72, 78, 79, and 81. Plaintiff's "dispute" with the remainder of the paragraphs are usually disputes "in part" that do not deny the content of what was stated in Pepsi's statements, but seek to add characterizations or include other statements not called for by Pepsi's statements. None of Plaintiff's objections raise any genuine dispute about a material fact that could affect the resolution of the motion before the Court. Pepsi's reply to Betty's responses are as follows:

**<u>DEFENDANT'S STATEMENT NO. 9</u>**

Betty, Inc. is a corporation existing under the laws of Connecticut with its principal place of business in Stamford, Connecticut. (Samay Dec. ¶7, Ex. 22 at ¶1.)

**<u>PLAINTIFF'S RESPONSE TO STATEMENT NO. 9</u>**

Betty disputes in part. Betty's principal place of business is in Trumbull, Connecticut. (Gregory Dec. Ex. 12).

**<u>DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 9</u>**

No genuine issue of material fact exists. Pepsi does not dispute that Betty's principal place of business is in Trumbull, Connecticut.

**DEFENDANT'S STATEMENT NO. 10**

Pepsi has been the title sponsor of the Super Bowl Halftime show for several years. (Samay Dec. Ex. 60 at 20:10-17.)   Pepsi has used a "through the ages" structure in prior commercials. (Phillips Dec. Exh. A, § III.A.2.) The prior Pepsi commercial "Now and Then" featured Britney Spears singing and dancing through various eras. (Phillips Dec. Exh. A, § III.A.2; Samay Dec. ¶ 10, Ex. 34, Ex.61 at 93:4-96:2, 101:4-9, 105:24-106:23, Exs. 72-73 at Nos. 94-95, 100-110, 118-124, Exs.74-75.) Each scene focused on a different time period and highlighted era-appropriate music, wardrobe, dance and vibe.  (Samay Ex. 34, Ex. 61 at 93:4-96:2, 101:4-9, 105:24-106:23.)   The prior Pepsi commercial "Bottle Pass" featured various performers dancing and moving through different eras. (Phillips Dec. Exh. A, § III.A.2; Samay Decl. ¶¶ 10, Ex. 34, Ex. 61 at 110:11-13, Exs. 72, 73 at Nos. 132-138.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 10**

Betty disputes in part.  The background performers changed in each scene and therefore did not transition through different eras.  Samay Dec. Ex. 34.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 10**

No genuine issue of material fact exists.  Pepsi does not dispute that some background performers may have changed between scenes in Bottle Pass.  That fact is not material to any of the claims or defenses at issue in this case.  Moreover, it appears that some background performers may have changed between scenes in the accused commercial as well.  Samay Dec. Ex. 34.

**DEFENDANT'S STATEMENT NO. 11**

Betty's Creative Director, Al Pascarelli, III, testified that the Now and Then commercial included: (a) "Britney Spears as the hero character" (Samay Dec. Ex. 61 at 93:24-94:2); (b) "genres of music changing" (Samay Dec. Ex. 61 at 94:3-5); (c) "wardrobe changed as the eras and genre changed" (Samay Dec. Ex. 61 at 101:4-9); (d) "dancing changes" (Samay Dec. Ex. 61 at 106:8-16); and (e) at least one "clean cut" (Samay Dec. Ex. 61 at 107:8-21.)  Mr. Pascarelli III testified that "any commercial that takes place on two different sets… you're going to have wardrobe changes" and that wardrobe changes have "certainly been used before and been used by Pepsi before."  (Samay Dec. Ex. 61 at 94:16 – 95:13.)     He concluded that Pepsi had previously used "that whole combination of things."  (Samay Dec. Ex. 61 at 106:8-21.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 11**

Betty disputes in part.  The PepsiCo statement takes the Pascarelli testimony out of context by selectively pulling tiny excerpts from his deposition.  In fact, Mr. Pascarelli did not state that the whole combination had been used before; those were the words of the examining attorney that Mr. Pascarelli did not adopt.  A fair reading of the testimony reveals that Mr. Pascarelli believes the "Now and Then" commercial to be clearly distinguishable from the "All Things/Living Jukebox" concept he created and presented to PepsiCo.  For example, the "Now and Then" spot did not employ the device of one continuous shot, it used different background cast members in each scene and it evoked for the viewer a different feel.  Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 14:7-20:11, 54:21-56:5, 94:16-97:20, 108:16-109:3.  Mr. Pascarelli testified that it was his combination of elements that made "All Kinds/Living Jukebox" unique; what he said is that PepsiCo had used "that whole combination of things" but only "in a way."  Samay Ex. 61 at 106:15-18.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 11**

No genuine issue of material fact exists. Betty does not dispute that Al Pascarelli testified that each of the elements (a) to (e) were in Pepsi's "Now and Then" commercial. Further, Pepsi does not dispute that Al Pascarelli testified that Pepsi had used "that whole combination of things" "in a way." Samay Dec. Ex. 61 at 106:15-18. Betty's response is not material as it is directed to Al Pascarelli's testimony as to elements not included in Defendant's statement, i.e. use of different background cast members in each scene, employing the device of one continuous shot, and evoking a different feel. Betty's statement is also not material as these elements are not stated in Betty's pitch. Samay Dec. Ex. 4.

**DEFENDANT'S STATEMENT NO. 15**

On November 6, 2015 the Pepsi team and additional Pepsi employees, as well as a few of Pepsi's production consultants, heard the pitches of fourteen participating agencies. (Segaran Dec. ¶ 3, Ex. A.) No other agency was allowed to sit in on the pitch meeting of another agency; only the pitching agency was allowed into the room during its allotted time. (Segaran Dec. ¶ 3.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 15**

Betty disputes in part. PepsiCo has not historically followed the "practice" cited in the supporting Segaran declaration to the effect that concepts presented to PepsiCo by one advertising agency are not shared with another agency. Because PepsiCo previously allowed one agency to sit in on the presentations of other agencies, a practice he considered "totally f***ed up" and "terrible", Tom Meyer of The Marketing Arm ("TMA") specifically asked Brad Groves of TMA to take note of the meeting attendees on November 6, 2015. Gregory Dec. Ex. 54.

5

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 15**

No genuine issue of material fact exists.  Betty offers no evidence to dispute that any other agency other than the pitching agency was in the room during a respective pitch during the November 6, 2015 pitches of the fourteen agencies.  Further, in certain commercial endeavors, it is fairly common to have collaborative joint pitches, as Ms. Segaran explained. Samay Dec. Ex. 64 at 79:4-16.

**DEFENDANT'S STATEMENT NO. 16**

The Marketing Arm was one of the agencies that presented a pitch to Pepsi on November 6, 2015.  (Samay Dec. ¶ 17, Ex. 63 at 48:13-15; Gilbar Dec. ¶ 9, Ex. C.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 16**

Betty does not dispute; however, it notes that one of the key PepsiCo decisionmakers, Barry Rosen of Direct Focus, Inc., had no memory of TMA making a presentation that day. Gregory Dec. Ex. 81 [Rosen Tr] at 109:2-11.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 16**

Mr. Rosen's lack of recollection regarding a specific presentation several years ago (in 2015) is not evidence that it did not occur.  Documentary evidence and testimony of every other witness present confirm that it occurred.  Segaran Dec. ¶ 5; Samay Dec. Ex. 92 at 59:20-22; Samay Dec. Ex. 89 at 62:13-19; Gilbar Dec. 9; Ex. 5, 35.¶

**DEFENDANT'S STATEMENT NO. 17**

The Marketing Arm pitch was conceived and reduced to paper between November 2 and November 6.  (Gilbar Dec. ¶¶ 3-4, Ex. C; Samay Dec. Exs. 5, 35.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 17

Betty disputes. The authenticity of the TMA presentation slide dated November 6, 2015 is not free of genuine dispute inasmuch as e-mails exchanged between TMA and PepsiCo on November 9 and 10, 2015 regarding concept refinements and in particular props to be used during the commercial, as well as a November 15, 2015 e-mail between Louis Arbetter and Jayanthi Segaran regarding the absence of an active role for the brand and the need for a clever twist at the end (a point PepsiCo emphasized at page 4 of its brief as the reason for TMA's selection), are inconsistent with the proposition that the November 6 slide presentation marked as an exhibit is in the form actually presented. Gregory Decl. Ex. 46, 76, 86.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 17

No genuine issue of material fact exists. Betty does not offer any evidence to dispute the authenticity of the exhibit marked as TMA's November 6 slide presentation. Although it had the opportunity to do so in discovery, Betty never challenged the authenticity of documents or took discovery to support any assertion that the documents are not exactly what they appear to be and what witnesses confirmed them to be. Multiple witnesses testified under oath and/or subject to penalty of perjury that the question documents were created, existed and presented on the dates that are the same as the documents are dated. Segaran Dec. at ¶5, Gilbar Dec. at ¶9; Meyer Dec. at ¶5; Samay Dec. Ex. 60 at 63:6-19 and Ex. 92 at 59:20-61:4. Betty purportedly relies on e-mails to raise questions about the documents, but it ignores emails between the parties that attach some of those documents which are time and date stamped. The e-mail and events surrounding the documents corroborate the document dates. For example, the e-mail dated November 7th confirms that the pitch deck which featured Christopher Walken was changed after the Jayanthi Segaran's November 6th request for a more contemporary star. Meyer Dec. Ex. E; Segaran Dec.

7

Ex. D.  The November 7th email also indicates the time period were reduced "from five" down "to three" in response to Ms. Segaran's November 6th request to simplify the concept.  *Id.*  There is no reason for anyone to have created a Christopher Walken pitch deck or a pitch deck with five time periods after November 6th as Betty suggests was the case.  Samay Dec. Ex. 5, 35.  The revised script, shared internally at The Marketing Arm on November 7th and with Pepsi on November 9, features Pharrell as the more contemporary talent.  *Id.*  One of the emails that Betty relies on (Exhibit 86) confirms that as of November 10th, Pharrell was being changed to Bruno Mars.  Gregory Dec. Ex. 86.  Thus there was also no reason to create a Pharrell deck after November 9th – the day every witness in the case testified the Pharrell deck was sent to Pepsi. Samay Dec. Ex. 63 at 74:5-23; Gilbar Dec. ¶10-14; Samay Dec. Ex. 91 at 151:19-154:6. Betty's cited emails raise no question of material fact about the authenticity of the documents relied upon by Pepsi.  To the contrary, its own cited emails confirm the timing of the key pitch materials.

More particularly, with respect to Exhibit 46, the suggestion was that "[d]uring the transition between eras, we focus on the can and show how the can/bottle transforms from era to era." This suggestion recommends increasing the focus on the Pepsi can at the transition between eras which is entirely consistent with, and reinforces, The Marketing Arm's original pitch, which suggested using era appropriate cans and bottles during some of the scenes.  Samay Dec. Ex. 5, 35.  It is worth noting that in Betty's pitch it never suggested changing cans and bottles or using logos, so those ideas could not have come from Betty.  Samay Dec. Ex. 4.

With respect to Exhibit 56, the provision of feedback provided November 17 is not material to whether feedback was provided before the revised pitch was created on November 7 and delivered to Pepsi on November 9.

With respect to Exhibit 76, Mr. Arbetter's suggestion for a more active role of the brand echoes Ms. Segaran's comment from the immediately preceding e-mail string which said "[t]here are no major revisions to this spot coming out of qual, the only feedback to Marc is to be very thoughtful about what Pepsi iconography and product inclusions he proposes, so that this becomes a Pepsi/Bruno spot, not a Bruno spot made by Pepsi."  Gregory Dec. Ex. 76.  Mr. Arbetter's reference to a "clever wink at the end" could have been a reference to Pepsi's pitch brief which sought a "[h]umorous" feature ideally a "clever wink at the end."  Samay Dec. Ex. 1. The reveal of the Pepsi globe at the end of The Marketing Arm's spot was a clever device but was not the humorous wink that Pepsi initially suggested.

With respect to Exhibit 86, the suggestion to feature product "signage" from each era presents another way of featuring Pepsi's product in the spot.  It does not negate the fact that The Marketing Arm suggested showing "off the brand heritage from the cursive logo to the modern day Pepsi globe" and using vintage Pepsi bottles during some of the eras it laid out in its script. Samay Dec. Ex. 5, 35.  Again, Betty did not suggest using Pepsi "signage" and logos, so this idea could not have been taken from Betty.   Samay Dec. Ex. 4.

**DEFENDANT'S STATEMENT NO. 19**

The Marketing Arm's "The Joy of Dance" was conceived, created, and then recorded in the November 6, 2015 pitch deck without any substantive input from Pepsi or its consultants (other than the Pitch Brief). (Samay Dec. Ex. 63 at 45:2-12, 46:10-47:6; Gilbar Dec. ¶¶ 16-17.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 19**

Betty disputes. The authenticity of the TMA presentation slide dated November 6, 2015 is not free of genuine dispute inasmuch as e-mails exchanged between TMA and PepsiCo on

November 9 and 10, 2015 regarding concept refinements and in particular props to be used during the commercial, as well as a November 15, 2015 e-mail between Louis Arbetter and Jayanthi Segaran regarding the absence of an active role for the brand and the need for a clever twist at the end (a point PepsiCo emphasized at page 4 of its brief as the reason for TMA's selection), are inconsistent with the proposition that the November 6 slide presentation marked as an exhibit is in the form actually presented. Gregory Decl. Ex. 46, 76, 86.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 19**

No genuine issue of material fact exists. Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement No. 17.

**DEFENDANT'S STATEMENT NO. 20**

On November 6, 2015, The Marketing Arm pitched three concepts. (Samay Dec. Ex. 63 at 47:7-9.) One of these was "The Joy of Dance." (Gilbar Dec. ¶ 9, Ex. C; Samay Dec. Exs. 5, 35, Ex. 63 at 55:15-22.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 20**

Betty does not dispute; however, it notes that one of the key PepsiCo decisionmakers, Barry Rosen of Direct Focus, had no memory of TMA making a presentation that day. Gregory Dec. Ex. 81 [Rosen Tr] at 109:2-11.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 20**

Mr. Rosen's lack of recollection regarding a specific presentation several years ago (in 2015) is not evidence that it did not occur. Documentary evidence and testimony of every other

witness present confirm that it occurred.  Segaran Dec. ¶ 5; Samay Dec. Ex. 92 at 59:20-22;

Samay Dec. Ex. 89 at 62:13-19; Gilbar Dec. 9; Ex. 5, 35.¶

## DEFENDANT'S STATEMENT NO. 21

The Marketing Arm Pitch indicated that "The Joy of Dance" commercial built on Pepsi's

"rich connection to the art of dance" and the Marketing Arm recognized that "[d]ancing is in the

DNA of the brand from Michael Jackson to Britney Spears to Beyonce."  (Segaran Decl. ¶ 5,

Ex. C at 141; Samay Dec. Exs. 5, 35 at 4; Samay Dec. Ex. 63 at 90:8-10.)  Creator, Marc Gilbar

said that he "[built] on the foundation of the Now and Then spot" and "hoped to deliver a fresh

twist to a classic concept."  (Gilbar Dec. at ¶ 4-6.)  The concept "showcase[es] 50 years of Pepsi

inspiring people to dance," using Pepsi's "brand heritage[,] from the cursive logo to the modern

day Pepsi globe, all the while set against the changing historical backdrop of each era." (Samay

Dec. Exs. 5, 35 at 4.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 21

Subject to the authenticity issue described (and the evidence presented) in response to

Statement Nos. 17 and 19, Betty does not dispute.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 21

No genuine issue of material fact exists.  Pepsi incorporates its response regarding

authenticity from its Reply to Plaintiff's Response to Statement Nos. 17 and 19.

## DEFENDANT'S STATEMENT NO. 22

In The Marketing Arm Pitch, "Christopher Walken, legendary actor and incredible

dancer, will walk us through a dance timeline of over 50 years," dancing through five eras of

Pepsi history by moving through several rooms in a circular set.  (Samay Dec. Exs. 5, 35 at 4-5.)
It proposed using a "continuous set with art direction that transforms to reflect each era."
(Samay Dec. Exs. 5, 35 at 4.)  Walken dances to a doo-wop version of the Joy of Pepsi, set in a
1950s diner; a Motown version of Joy of Pepsi in a "young American graffiti-era" set; a disco
version in a 1970s disco; an 80s Michael Jackson-style version in an homage to a Michael
Jackson music video; and a 90s/00s version in a modern house party. (*Id.* at 5.) Another option
was to "license music from each era and create a mash-up."  (*Id.* at 4.) In each of these settings,
the styles, set and Pepsi branding changes to reflect the era. (*Id.* at 5.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 22

Betty disputes in part. Subject to the authenticity issue described in response to
Statements 19 and 20 (and the evidence presented), according to the "Joy of Dance" exhibit
dated November 6, 2015, TMA proposed six era scenes. The Statement is misleading because
the written concept deck does not propose Christopher Walken moving "through" several rooms
but instead it proposes that the rooms would rotate behind him.  Further, the PepsiCo statement is
misleading inasmuch as it merges two distinct proposed options (Option 1 and Option 3) as if it
were one concept; also, neither option employed a hero character navigating anywhere.  Samay
Dec. Exs. 5, 35 at 4-5.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 22

No genuine issue of material fact exists.  Pepsi incorporates its Reply to Plaintiff's
Response to Statement Nos. 19 and 20.  While  not a material distinction, Pepsi notes that the
evidence supports the fact that TMA's pitch proposed five eras:  1950s, 1960s, 1970s, 1980s,
1990s/2000s.  Samay Dec. Ex. 5, 35 at 5.  Pepsi does not dispute that the set rotates to assist

Christopher Walken's movement between scenes with different backdrops. Samay Dec. Exs. 5, 35 at 4-5. The document does not say that rooms are "behind" Mr. Walken and the pitch has Ms. Walken navigating "through one continuous set." The document, as noted, provides "options" that can be used interchangeably in the example script on page 5 of the Pitch.

**DEFENDANT'S STATEMENT NO. 23**

Between every scene, The Marketing Arm pitch notes that "the set rotates to reveal a new back drop." (Samay Dec. ¶ 4, Exs. 5, 35 at 5.) Wardrobe changes from American Graffiti-era, to sequin dresses, to bellbottoms, criminal outfits, to present day millennial garb. (Samay Dec. Exs. 5, 35 at 5.) The color or "art direction and wardrobe" changes from red, to white to blue. (Samay Dec. Exs. 5, 35 at 5.) And dance styles changes from jitterbug, to the twist, to Saturday Night Fever style, to Michael Jackson moves, to pop-and-lock. (Samay Dec. Exs. 5, 35 at 5.) The pitch proposes achieving clean, seemingly seamless cuts using a rotating set, where the camera is "locked off" and the circular set rotates. (Samay Dec. Exs. 5, 35; Phillips Dec. Ex. A at III.B.3.6.) The pitch document also provides a link to a NFL Calendar video which shows an example of how scenes can change seamlessly while traveling from room to room. (Samay Dec. Exs. 5, 35 at 4; see also Gilbar Dec. at ¶ 13.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 23**

Betty disputes in part. By proposing the camera be "locked off" and a "giant circular set" [notating] left to right as if on a giant "LAZY SUSAN," used, but the written deck does not propose "clean, seamless cuts" and it does not propose any navigating anywhere. A review of the Wes Anderson commercial (https://www.youtube.com/watch?v=C2zn-8KAiro) demonstrates

the dramatic difference between what TMA propose and what was actually employed in the 2016 Super Bowl Commercial.  Samay Dec. Exs. 5, 35, at 5.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 23

No genuine issue of material fact exists.  Pepsi does not dispute that TMA's pitch deck proposed that the camera be "locked off" and "a giant circular set" as if on a lazy susan.  The report of the only expert in the case on this issue, stated that "TMA's pitch accomplishes this seamlessness using a rotating set."  Betty provides no evidence to refute that the devices described in the pitch accomplish seamlessness – as the set rotates to show Mr. Walken's movements through the rooms on the set.  Moreover, the pitch includes a link to the NFL calendar which depicts seamless transitions.  Samay Dec. Ex. 5, 35 at 4.

## DEFENDANT'S STATEMENT NO. 24

The Marketing Arm Pitch further detailed that at the end of the spot, the camera pans up to reveal that "the giant circular set forms the shape of the PEPSI GLOBE," where the various rooms Walken danced through were actually segments of the Pepsi Globe logo.  (Samay Dec. Exs. 5, 35 at 5.)  Each of the rooms was to have "art direction and wardrobe in red, white or blue such that the colors of the globe match the logo." (*Id.*) According to Tom Meyer, one of The Marketing Arm team members, "[E]verything was always about the logo." (Samay Dec. Ex. 63 at 77:17-25.)  Betty's statement suggests that the only mechanical execution of the pitch, including Option 1 with Christopher Walken, must have been mechanically executed by the mechanics in the Wes Anderson example, which was provided as an example for Option 3 on the slide deck.  Samay Dec. Ex. 5, 35.

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 24

In addition to the authenticity issue described (and the evidence presented) in response to Statement Nos. 17 and 19, Betty disputes.  In the pitch, there was not going to be a hero character dancing "through" rooms but instead the rooms would have been rotated behind him. Samay Exs. 5, 35.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 24

No genuine issue of material fact exists.  Pepsi incorporates its Reply to Plaintiff's Response to Statement Nos. 17 and 19.  Pepsi does not dispute that the pitch proposed the hero character, proposed as Christopher Walken, dancing as the rooms rotated.  Samay Exs. 5, 35. However, the evidence does not support that the pitch included that the set rotates "behind him" as described in Betty's statement.  Samay Dec. Exs. 5, 35.

## DEFENDANT'S STATEMENT NO. 25

Within a few hours of The Marketing Arm delivered its original pitch, Betty pitched eight concepts. (Samay Dec. Ex. 61 at 11:23-25.) The first of these concepts was entitled "All Kinds/Living Jukebox." (Samay Dec. ¶3, Ex. 4; Segaran Dec. ¶ 4; Ex. B at 5-6.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 25

Betty disputes in part. As written, the Statement disingenuously implies that Betty supplied its written deck and made its presentation to PepsiCo after the TMA presentation. In fact, Betty presented during the morning of November 6, 2015 and TMA did not present until the afternoon. Gregory Dec. Ex. 3, Ex. 79 [Segaran Tr] at 94:16-25; Ex. 80 [Danzi Tr] at 41:22-46:3, 55:12-15.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 25**

No genuine issue of material fact exists.  Pepsi does not dispute that Betty presented in the morning and TMA presented after Betty.

**DEFENDANT'S STATEMENT NO. 26**

The "All Kinds/Living Jukebox" pitch "starts outside a giant Brooklyn(like) warehouse," following "the camera perspective of someone walking in." Samay Dec. ¶3, Ex. 4; Segaran Dec. ¶ 4; Ex. B at 5.) "Outside the door, a man plays an acoustic guitar singing an acoustic rendition of the Joy of Pepsi." (*Id.*) As the commercial continues, "the genres start to change and unfold while the song remains the same and continues in the spot the acoustic singer left off." (*Id.*) The commercial moves through "various rooms where [the viewer] experience[s] the song in different genres." (*Id.*)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 26**

Betty disputes in part.  The PepsiCo statement selectively quotes from the Betty written pitch deck but does so in a way that implies the commercial would necessarily start outside a Brooklyn-style warehouse with a man playing an acoustic guitar.   In fact, the evidence establishes that Mr. Pascarelli emphasized the flexibility of his concept in respect of its setting ("Doesn't have to be a walkthrough of the warehouse" or the particular genre of music.)  Betty also proposed multiple song versions (Living Jukebox). The Betty pitch clearly indicates that all renditions would be achieved by a single powerful performer.   Samay Dec. Ex. 4, 21; Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 19:18-20:25.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 26**

No genuine issue of material fact exists. Betty does not dispute that the elements in Defendant's statement were actually described on the first page of Betty's "All Kinds" pitch. Samay Dec. ¶3, Ex. 4; Segaran Dec. ¶ 4; Ex. B at 5.) Betty's response is merely directed to the flexibility to carry out the idea of the pitch. In its response, Betty does not suggest that its pitch described any other way to start the spot other than a Brooklyn-type warehouse. Betty's pitch does not mention use of any song other than "The Joy of Pepsi." Samay Dec. Ex. 4. In fact, Betty's pitch states "the song remains the same." Id. To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case.

**DEFENDANT'S STATEMENT NO. 27**

The pitch lists several potential genres for "The Joy of Pepsi" to be performed in, including rock, rap, jazz/swing, classical, and metal. (Samay Dec. ¶ 3, Ex. 4.) The pitch does not reference other songs or licensed music. (Samay Dec. Exs. 72-73 at No. 20-26.) The text of the pitch never once mentions the word "dance." (Samay Dec. Ex. 4, Ex. 62 at 17:16-19, Ex. 61 at 55:16-57:18.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 27**

Betty disputes in part. The PepsiCo statement incorrectly implies that the pitch concept depended on the use of particular genres of music. While the pitch deck does not use the word "dance" such word is implied by the term "vibe" in the written deck and expounded upon during the oral presentations and the use of a jukebox implies emplying different songs. Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 14:5-20:11, 55:16-56:24.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 27**

No genuine issue of material fact exists.  Betty does not dispute that the pitch deck listed several genres for the "Joy of Pepsi," and it offers no evidence to dispute that the copyrighted pitch deck included different genres.  Likewise, Betty does not dispute that the term dance is never mentioned in the copyrighted pitch deck.  To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case and are immaterial to resolution of the case.

**DEFENDANT'S STATEMENT NO. 28**

The "All Kinds/Living Jukebox" pitch provides additional references to "a lone singer with an Adele like quality" and "an upright bass plucking out the 'ba ba ba ba ba.'" (Samay Dec. Ex. 4.)  The commercial ends on the far side of the warehouse where "a doo wop/acappella crew is standing around a fire lit in a trash can." (*Id.*)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 28**

Betty disputes in part. The PepsiCo statement selectively quotes from the Betty "All Kinds/Living Jukebox" written deck but it does so in a way that implies the commercial necessarily depended on the cited treatments, which the evidence makes clear was not the case. The Betty pitch clearly indicates that all renditions would be achieved by a single powerful performer. Samay Dec. Ex. 4, 21; Gregory Dec. Ex 77 [Al Pascarelli Tr] at 19:18-20:25.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 28**

No genuine issue of material fact exists.  Betty does not dispute that the pitch deck included the elements described in Defendant's statement.  Whether there could be other

unidentified ways of implementing a scene does not change the fact that Betty's pitch discloses only the descriptions contained therein.  Samay Dec. Ex. 4. The pitch document indicates that it "can be a single powerful performer", not that it must be.  Id. In fact the deck has at least two different performers in the described text.

**DEFENDANT'S STATEMENT NO. 29**

The "All Kinds/Living Jukebox" pitch suggests using a title of "Joy takes all kinds." (Samay Dec. Ex. 4.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 29**

Betty disputes.  PepsiCo quotes selectively from Betty's written pitch deck and in this instance the quote is incomplete; the full indication in the written deck is "Joy takes all kinds. Pepsi."  Samay Dec. 4, 21.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 29**

No genuine issue of material fact exists.    Pepsi does not dispute the title in Betty's response.

**DEFENDANT'S STATEMENT NO. 31**

The "Considerables" ideas include:

a. That the commercial "doesn't have to be a walkthrough of the warehouse." (Samay Dec. ¶ 3, Ex.4).  Mr. Pascarelli III described in his testimony that "I wouldn't say the idea was you're walking through a warehouse.  I would say the idea is a hero character is walking through various rooms, and the genre of music, the style, the dancing, the performance from the main character are all changing

the vibe of the – of the genre of music." (Samay Ex. 61 at 24:15-25:3.) He further admitted that this description was the "idea broadly" and that "absolutely," you "could have different implementations of that idea." (*Id.*);

b.   That the commercial could "[make] clean cuts from genre to genre." (Samay Dec. ¶ 3, Ex. 4 at 6.) Mr. Pascarelli III testified that "there's been clean cuts in other commercials." (Samay Dec. Ex. 61 at 60:21-25);

c.   That the commercial could utilize "a single powerful performer Celeb or Not." (Samay Dec. ¶ 3, Ex. 4 at 6);

d.   That the commercial could utilize quick changes in "the way magicians accomplish quick changes…one dress comes off, another is underneath ready to go." (*Id.*); and

e.   And that Pepsi could "[c]rowdsource renditions of Joy of Pepsi as contests on social media." (*Id.*).

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 31

a.   Betty does not dispute.

b.   Betty disputes in part.  PepsiCo quotes selectively from Betty's written pitch deck and in this instance the quote is misleading inasmuch as it implies that clean cuts from genre to genre were not a fundamental part of the combination of elements proposed by the concept.  Mr. Pascarelli did not testify that the clean cuts had previously been stitched together the way he proposed.  Samay Ex. 4, 21; Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 106:24-107:24.

c.  Betty disputes in part.  PepsiCo quotes selectively from Betty's written pitch deck and in this instance the quote is incomplete inasmuch as it was fundamental to the Betty concept that a single powerful performer (hero character) be able to pull off all renditions so that the seamless transitions from scene to scene could be achieved.  The concept provided for a single powerful performer, whether or not a celebrity.  Samay Dec. Ex. 4, 21; Gregory Dec. 77 Ex. [Al Pascarelli Tr] at 19:18-20-25, 55:16-56:24.

d.  Betty does not dispute.

e.  Betty does not dispute.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 31**

No genuine issue of material fact exists.  While Betty calls Pepsi's quotes "selective," there is no dispute that the only reference to clean cuts is in the "considerables" on page 2 of the pitch.  Samay Dec. Ex. 4.  To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case.  And, no specific clean cuts were described anywhere in Betty's pitch.  Id. There is no dispute that the "considerables" section stated "[c]an be a single powerful performer."  Id.

**DEFENDANT'S STATEMENT NO. 32**

Despite all these Considerables, Betty admitted that the "All Kinds/Living Jukebox" pitch did not include many features of the Commercial:

a.  Betty's written pitch does not include any reference to the idea that the "doorway is the agent of change." (Samay Dec. Ex. 61 at 55:9-11);

b.  The "vibe" of the rooms as expressed in "All Kinds/Living Jukebox" does not necessarily include dance, and the pitch does not reference dance or even contain the word "dance." (Samay Dec. Ex. 61 at 57:14-18, Ex. 62 at 17:16-19, Exs. 71, 72  at No. 59);

c.   "All Kinds/Living Jukebox" does not reference any specific performer. (Samay Dec. Ex. 61 at 71:15-16, Exs. 71, 72 at Nos. 44-48);

d.  The "All Kinds/Living Jukebox" pitch does not reference moving through different time periods. (Samay Dec. Ex. 61 at 78:19-22, Exs. 71, 72 at Nos. 49-50);

e.  The "All Kinds/Living Jukebox" pitch does not reference using a physical jukebox in the commercial. (Samay Dec. Ex. 61 at 79:10-12, Exs. 71, 72 at Nos 29-36);

f.  The "All Kinds/Living Jukebox" pitch does not suggest using a diner as a setting. (Samay Dec. Ex. 61 at 80:18-23);

g.  The "All Kinds/Living Jukebox" pitch does not suggest using the Pepsi Globe as a set. (Samay Dec. Ex. 61 at 82:2-4);

h.  The "All Kinds/Living Jukebox" pitch does not suggest starting the commercial with a Pepsi logo on a record, or even using a physical record at all. (Samay Dec. Ex. 61 at 82:5-7);

i.  The "All Kinds/Living Jukebox" pitch does not suggest using music by either The Contours or Madonna. (Samay Dec. Ex. 61 at 82:12-17); and

j.  The "All Kinds/Living Jukebox" pitch does not suggest using Pepsi logos from various time periods. (Samay Dec. Ex. 61 at 82:23-83:2.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 32**

a.  Betty disputes.  The written pitch deck for "All Kinds/Living Jukebox" indicates that the changes in music genre, fashion, clothes, and vibe will change as the viewer travels through the various rooms.  Samay Ex. 4, 21.  The oral presentation expounded on the concept and emphasized the role and importance of the doorways serving as the agents of change.  Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 55:16-56:24.

b.  Betty disputes in part.  While the written pitch deck for "All Kinds/Living Jukebox" does not include the word "dance" such term is implied by the word "vibe", which Mr. Pascarelli expounded on during the oral presentation.  Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 55:16-56:24.

c.   Betty does not dispute.

d.  Betty disputes.  The element of moving through different time period is implied with the changes of fashion and clothes.  Samay Dec. Ex. 4; Gregory Dec. Ex. 77 [Al Pascarelli Tr] 28:25-29:12, 78:19-23.

e.  Betty disputes.  From the title of the concept the physical use of a jukebox is implied.  Samay Dec. Ex. 4.

f.  Betty does not dispute.

g.  Betty does not dispute.

h.  Betty does not dispute.

i.  Betty does not dispute.

j.  Betty does not dispute.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 32

a.  Betty does not dispute that its written deck does not indicate the doorway as the agent for change.  To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case and are immaterial to resolution of the case.

b.  Betty does not dispute that the word "dance" is not included in its written pitch deck.

d.  No genuine issue of material fact exists.  Betty's written pitch does not mention transitioning eras and Betty cites no evidence that Betty in fact discussed the concept of moving through eras.  Arguing for scope including possibilities not discussed only highlights that Betty's claims are generalized ideas.

e.  No genuine issue of material fact exists.  Although Betty's written pitch does not mention a physical jukebox and Betty cites no evidence that Betty in fact discussed the concept of having a physical jukebox, Betty merely suggests that it can be implied to stretch the reach of its concept.

## DEFENDANT'S STATEMENT NO. 34

As part of these initial reactions, Pepsi team members felt that "All Kinds/Living Jukebox" was "dark," and given that "Pepsi is a happy, joyful brand," the imagery, like the

Brooklyn-like warehouse and the firelit trashcan, could be associated with homelessness and that it "seemed very dark and not on brand." (Segaran Dec. ¶ 4; Samay Dec. Ex. 60 at 55:19-56: 7; *see also* Ex. 64 at 109:25-110:9 ("You know, often how a spot begins and how it ends are important, I didn't like the way people were standing around a fire lit in a trash can.").) Jayanthi Segaran "wasn't really all that interested in changing the Joy of Pepsi to make it heavy metal" and "didn't like the way people were standing around a fire lit in a trash can." (Samay Dec. Ex. 64 at 109:25-110:9; *see als*o Segaran Dec. ¶4.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 34

Betty disputes. In general, the PepsiCo witnesses were unable to recall the discussion from the "wrap-up meeting" about the Betty presentation or about the presentations made by the other agencies, including the TMA presentation. Ms. Segaran testified that she did not recall the pitch being reliant on particular genres. Gregory Dec. Ex. 78 [Arbetter Tr] at 56:11-17; Ex. 79 [Segaran Tr] at 107:6-108:16.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 34

No genuine issue of material fact exists. The fact that Pepsi witnesses only remembered certain impressions, namely, that the Betty pitch was dark, and not every detail of discussions that occurred years ago is not remarkable. Betty offers no evidence to dispute the content of the recollections listed and merely notes that the Pepsi witnesses did not recall other details about the pitches.

## DEFENDANT'S STATEMENT NO. 36

To members of the Pepsi team, "The Joy of Dance" felt appropriate for Super Bowl 50 given the tie-in to music history. (Samay Dec. Ex. 60 at 73:25-74:19.) Jayanthi Segaran, point

person for the SuperBowl project team, liked the idea of dance. (Samay Dec. Ex.64 at 120:11-23.) She noted that the "2016 commercial was a homage to PepsiCo's history and it was inspired not just by [the Britney Spears'] commercial," but by other previous Pepsi commercials as well. (Samay Dec. Ex. 64 at 182:19 – 184:10, 187:1-188:1.) Team member, Jen Danzi, agreed and "felt strongly" that Pepsi should "take the 'Joy of Dance' and just make a classic Pepsi dance spot in the vain of Brittany Spears." (Samay Dec. Ex. 92 at 67:15-24.) Lou Arbetter and others "really liked the ending," thinking that the reveal of the Pepsi Globe "was a really clever and important device" that "popped." (Samay Dec. Ex. 64 at 123:13-124:7, Ex. 60 at 65:1-18.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 36

Betty disputes. For the reasons indicated (and evidence presented) in response to Statement Nos. 19 and 20, there is a genuine dispute about whether the idea that the ending of the TMA concept could have been considered during the wrap-up meeting.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 36

No genuine issue of material fact exists. Pepsi incorporates its Reply to Plaintiff's Response to Statement Nos. 19 and 20

## DEFENDANT'S STATEMENT NO. 38

Taking the feedback and quick timeline under advisement, The Marketing Arm immediately began refining the concept. (Gilbar Dec. ¶¶ 10-11, Ex. E.) Marc Gilbar of The Marketing Arm sent an updated script internally early the following morning, on November 7, 2015. (Gilbar Dec. ¶ 11, Ex. E.) The script maintained the closing of the device of revealing that the scenes occurred within Pepsi's trademarked globe logo. (Gilbar, Ex. E.) The revised script updated the performer to Pharrell, simplified from five time periods to three, added licensed

music suggestions, and removed the element of the continuous shot. (Gilbar Dec. ¶¶ 11-13, Ex. F.) The script also updated the settings for each of the time periods, including a jukebox as a prop in the opening 1950s type diner scene and as a mechanism to display the Pepsi branded globe on the surface of a record and start music playing in the diner.  (Gilbar Dec. at ¶ 12, Ex. F; Samay Dec. Ex. 63 at 75:2-23.)   Mr. Gilbar explained that "there's only one logical way to establish music playing in a 1950s diner and that's through a jukebox."  (Gilbar Dec. at ¶12). Expert Zachary Phillips agreed.  (Phillips Dec. Ex. A at III.A.2ii.5.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 38**

Betty disputes in part. For the reasons indicated (and the evidence presented) in response to Statement Nos. 17 and 19, the authenticity of the written TMA deck is uncertain. In addition, the original script set forth more than five time periods and did not contain the element of one continuous shot. Samay Ex. 5, 35. Betty also disputes the proposition that there is "only one" logical way to establish music playing in a 1950s diner and it notes that e-mails reference phone calls that the witnesses could not remember.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 38**

No genuine issue of material fact exists.  Pepsi incorporates its response re authenticity from its Reply to Plaintiff's Response to Statement Nos. 17 and 19.  Further, while not a material distinction, Pepsi notes that the evidence supports the fact that TMA's pitch proposed five eras: 1950s, 1960s, 1970s, 1980s, 1990s/2000s.  Samay Dec. Ex. 5, 35 at 5.  The pitch discloses filming on "one continuous set" with the camera locked and the set rotating. Additionally, Betty does not provide any evidence to refute that the only logical way to establish music in a 1950s diner is a jukebox.  At a minimum, it is a common and expected way to do so.

27

**DEFENDANT'S STATEMENT NO. 39**

The Marketing Arm team submitted the updated concept on Monday, November 9, 2015. (Samay Dec. ¶ 5, Ex. 9, Ex. 63 at 74:14-18; Segaran Dec. ¶ 9, Ex. D; see also Gilbar Dec. ¶¶ 11-14, Ex. F.)  The submitted revised pitch included the revisions noted above in ¶ 38.  *Id.*  All of the work was done without any access to Betty or its pitch deck.  (Gilbar Dec. at ¶¶15-17, Ex. D; Samay Dec. Ex. 63 at 87:10-12; Segaran Dec. ¶ 8.)  Mr. Meyer said that he had "never seen any Betty material in [his] life" and they created the "spot from soup to nuts" and it was "100 percent" their own spot. (Samay Dec. Ex. 63 at 17:7-12, 89:22-25.) Mr. Gilbar indicated that he "had no access whatsoever to any Betty materials or information." (Gilbar Dec. at ¶15.) Later that day, Ms. Segaran emailed The Marketing Arm noting that the spot would move forward into testing. (Segaran Dec. ¶ 9.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 39**

Betty disputes. While there is no direct evidence of TMA receiving a copy of the Betty concept deck or an explicit description of Betty's prior oral presentation, the evidence does reveal that TMA received input from individuals who were present during, and received, the Betty November 6, 2015 presentation. Gregory Dec. Ex. 45, 46, 53, 56, 76, 86.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 39**

No genuine issue of material fact exists.  Betty does not contest that TMA received no input after Betty's pitch and before TMA's creation of the revised pitch.  Nor does Betty provide any evidence that TMA heard anything about Betty ever.  Gilbar Dec. ¶ 15.

**DEFENDANT'S STATEMENT NO. 43**

Betty applied to register its "All Kinds/Living Jukebox" presentation deck with the U.S. Copyright Office on May 18, 2016. (Samay Dec. Ex. 33.) The registration covers the "text of storyline" and explicitly excludes "photograph(s), artwork, Pepsi name and logo." (*Id.*) The only copyrighted materials at issue are fixed in Betty's written Pitch, produced in this matter as PEPSI0000005-19. (Samay Dec. Exs. 4, 21, 33, Ex. 61 at 32:17-22, Exs. 72-73 at Nos. 7, 10.) Betty alleges that the Commercial is based on pages PEPSI0000005-6. (Samay Ex. 22 at ¶ 23, Ex. 61 at 32:17-22.) However, during discovery, Betty or its representatives admitted that:

  a. The commercial does not begin outside a giant Brooklyn warehouse. (Samay Dec. Ex. 61 at 41:21-24, Exs. 72, 73 at No. 80);

  b. The commercial does not start with a camera perspective of somebody walking into a warehouse. (Samay Dec. Ex. 61 at 41:25-42:4, Exs. 72, 73 at No. 81);

  c. The commercial does not have a man outside the door playing an acoustic guitar, singing an acoustic rendition of "The Joy of Pepsi." (Samay Dec. Ex. 61 at 42:5-8, Exs. 72, 73 at No. 82);

  d. The commercial does not have a scene where the viewer enters the warehouse and genres start to change and unfold. (Samay Dec. Ex. 61 at 42:9-14, Exs. 72, 73 at No. 84);

  e. The song does not remain the same throughout the Commercial. (Samay Dec. Ex. 61 at 44:8-10, Exs. 72, 73 at No. 85-88);

f.  There is not any rap in the Commercial. (Samay Dec. Ex. 61 at 50:19-22, Exs. 72, 73 at Nos. 92-93);

g.  There is not any jazz or swing in the Commercial. (Samay Dec. Ex. 61 at 50:23-25, Exs. 72, 73 at RFA Nos. 94-97);

h.  There is not any classical music in the Commercial. (Samay Dec. Ex.61 at 51:5-7, Exs. 72, 73 at Nos. 98-99);

i.  There is not a metal interpretation of the "Joy of Pepsi" in the Commercial. (Samay Dec. Ex. 61 at 51:10-13, Exs. 72, 73 at Nos. 100-101);

j.  There is not a "lone singer with an Adele-like quality" in the Commercial. (Samay Dec. Ex. 61 at 52:20-53:5; Exs. 72, 73 at No. 102);

k.  There was no upright bass plucking out "The Joy of Pepsi" in the Commercial. (Samay Dec. Ex. 61 at 53:6-10, Exs.72, 73 at No. 103);

l.  The Commercial does not include anyone walking out of a warehouse. (Samay Dec. Ex. 61 at 53:20-23);

m.  There is not a doo-wop/acapella crew standing around a fire lit in a trash can in the Commercial. (Samay Dec. Ex. 61 at 53:24-54:3, Exs. 72, 73 at No. 104);

n.  The title of the Commercial is not "Joy takes all kinds." (Samay Dec. Ex. 61 at 54:4-10); and

o.  The Commercial does not use quick changes the way magicians accomplish quick changes. (Samay Dec. Ex. 61 at 71:25-72:5, Exs. 72, 73 at No. 107).

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 43**

Betty disputes in part.

    a.  Betty does not dispute.

    b.  Betty does not dispute.

    c.  Betty does not dispute.

    d.  Betty does not dispute.

    e-i. PepsiCo produced a second version of the Super Bowl commercial at the same time with the only difference being that it employs the "Joy of Cola" song in different musical genres.  Gregory Dec. Ex. 49; 79 [Segaran Tr] at 202:16-203:9; 204:10-205:7; 207:8-208:24; Ex. 85 [Meyer Tr] at 91:9-93:1.

    j.  Betty does not dispute.

    k.  Betty does not dispute.

    l.  Betty does not dispute.

    m. Betty does not dispute.

    n.  Betty does not dispute.

    o.  Betty does not dispute.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 43**

    e-i.  No genuine issue of material fact exists.  Betty's statements do not implicate any material fact that could affect resolution of this case.  The second version is not

accused in this case and was never released.  D.I. 32; Samay Dec. Ex. 93 at 148:2-4.

## DEFENDANT'S STATEMENT NO. 44

Zach Phillips, an expert in the field of advertising and film creation and production, submitted an expert report explaining that Betty's concepts were not original and were, in fact, standard devices that would naturally flow from the idea in the commercial.  (Phillips Dec. ¶ 1, Ex. A at III.B.2, III.A.2.ii.5.)  Betty did not submit any responsive expert report of its own and elected not to depose Mr. Phillips.  (Samay Dec. ¶ 31.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 44

Betty does not dispute; however, Mr. Pascarelli's experience and expertise in creative gives his testimony as much, if not more, credibility than Mr. Phillips.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 44

No genuine issue of material fact exists.  Pepsi notes that Mr. Pascarelli was not offered as an expert, and did not disclose any opinions in expert discovery.

## DEFENDANT'S STATEMENT NO. 45

The techniques used to shoot "The Joy of Dance" are commonplace in the industry. (Phillips Decl. Ex. A at III.A.2; Samay Decl. Exs. 72-73 at Nos. 144-145.)  Al Pascarelli III admitted that clean cuts are a common editing technique that did not originate with Betty. (Samay Decl. Ex. 61 at 60:15-25.) Mr. Phillips identified clean cuts in both "Now and Then" and "Bottle Pass," which Mr. Pascarelli III also identified in his deposition. (Phillips Dec. Ex. A at III.A.2.ii.4; Samay Dec. Ex. 61 at 107:18-21; 120:5-10.)  Betty's creative director further

testified that he saw the "Now and Then" commercial *before* he crafted his pitch to Pepsi. (Samay Dec. Ex. 61 at 93:4-23.)   Mr. Pascarelli III also admitted that "Now and Then" commercial starred a powerful performer, Britney Spears, as she danced through various eras changing wardrobe, dance style, music, and genre.  (Samay Dec. Ex. 61 at 93:24-95:24, 101:4-9, 105:24-106:22.)  Thus, Pepsi had already used "that whole combination of things".  (Samay Dec. Ex. 61 at 106:15-18.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 45

Betty disputes in part. The "Now and Then" and "Bottle Pass" commercials did not employ clean cuts to create a single continuous shot to navigate through one changing environment. Samay Ex. 34. As noted above, Mr. Pascarelli's did not use the phrase "that whole combination of things" testimony but pushed back on the examining attorney's use of that phrase. Samay Dec. Ex. 61 at 106:15-18. It is the unique combination of all of the proposed elements that created a uniqueness to "All Kinds/Living Jukebox." In neither commercial were doorways used as the agents of change, the background cast was not the same in each scene and there was not one continuous shot of a changing environment. Samay Ex. 34.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 45

No genuine issue of material fact exists.  Betty does not dispute Pepsi's previous use of each of the elements described in Defendant's statement.   Betty merely notes additional elements, not at issue, that Betty states are not in the previous Pepsi commercials.  Notably, these elements are not part of Betty's pitch as written and registered.  Samay Dec. Ex. 4, 33.  To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright

at dispute in this case and are not material to resolution of the case. Further, Betty's statement is not material because some background performers are not the same in the accused Commercial nor was the accused Commercial filmed in a single shot.

## DEFENDANT'S STATEMENT NO. 46

Pepsi has also used jukeboxes in prior commercials to indicate era or setting. (Phillips Dec. Ex. A at III.A.2.i.) This is part of a common industry technique called "mise en scene." (Phillips Dec. Ex. A at III.A.2.ii.5.) Pepsi used a jukebox in its prior commercial "Diner," to denote setting and to start the music. (Phillips Dec. Ex. A at III.A.2.ii.5; Samay Dec. Ex. 34.) "Now and Then" similarly features a jukebox in the opening scene. (Samay Dec. Ex. 34.) Mr. Pascarelli III admitted that the previously-aired Pepsi commercial "Diner" depicting an interaction between a Pepsi truck driver and a Coca-Cola truck driver also displayed, within the first couple of seconds of the commercial, a jukebox in a diner playing a record. (Samay Dec. ¶10, Ex. 61 at 121:3-9.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 46

Betty disputes the proposition that the "facts" set forth in the Statement are material. The importance of the jukebox is that it was suggested by "All Kinds/ LivingJukebox" and is indicative of PepsiCo employees/agents providing material elements of Betty's concept to TMA to elevate the TMA concept in a way that was very different from the original TMA concept. Samay Dec. Ex. 4, 21; Gregory Dec. Ex. 56 p3.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 46

No genuine issue of material fact exists. Betty disputes only to the materiality of the statement. However, Betty fails to provide any evidence that the jukebox was suggested by

Pepsi to The Marketing Arm, or contest that jukeboxes have been used before or would be expected to be used in a 1950s/1960s diner scenes with music.

## DEFENDANT'S STATEMENT NO. 48

Betty's complaint pleaded four state law claims, including a breach of contract claim, all of which were dismissed. (D.I. 1 ¶¶ 41-55, D.I. 30 at 23-24.) The dismissed breach of contract claim was based on a supposed verbal agreement and custom. (D.I. 1 at ¶16.) Betty amended its complaint and it re-pleaded its contract claim, this time alleging breach of a written agreement (the Agreement). (Samay Ex. 22 at ¶¶ 42, 54.) Betty alleged that "PepsiCo breached the Services Agreement it made with Betty by not working in good faith with Betty to enter into a Scope of Work with Betty once it decided to use Betty's work product." (*Id.*)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 48

Betty disputes in part. Betty disputes the proposition that the wording of its original Complaint represents a material fact; the Amended Complaint is the operative pleadings in the litigation. Betty does not dispute the second two sentences.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 48

Pepsi does not dispute the content of the Amended Complaint, and notes that Betty's positions were elucidated by briefing. Nothing material to the motion is disputed regarding this statement.

## DEFENDANT'S STATEMENT NO. 49

The Agreement contains a number of provisions that outline the obligations of Betty. (Samay Dec. ¶ 8; Ex. 23.) Not a single provision in the agreement expressly requires Pepsi to

negotiate with Betty for new work. (*Id.*)  The Agreement provides that Pepsi will not have "any obligation of liability of any nature whatsoever to the Agency, except as expressly set forth." (*Id.*)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 49**

Betty disputes in part. Section 7 of the Services Agreement provides that PepsiCo will not own and will not use any Betty work product in the absence of a negotiated Statement of Work and payment of the fee contemplated by such SOW. Samay Ex. 23.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 49**

Pepsi states that provision in the contract speaks for itself and nowhere creates a separate obligation to negotiate. There is always the option to negotiate a new agreement but there was no obligation. Samay Dec. Ex. 62 at 127:12-128:12, Ex. 23. Moreover, other ownership provisions in section 7 and at common law may apply and section 7 does not read in the negative the way Plaintiffs state it above.

**DEFENDANT'S STATEMENT NO. 50**

Betty's CEO and 30(B)(6) witness testified that there is not "any provision in the contract that requires Pepsi to negotiate with Betty" toward any new Scope of Work. (Samay Dec. Ex. 62 at 127:12-128:12, Ex. 23.)  To the contrary, "it was up to Pepsi's sole discretion whether they were to do business with Betty in the future." (Samay Dec. Ex. 62 at 45:22-46:8, Ex. 23 at ¶1.) No material terms for any new Scope of Work concerning use of Betty work product were ever discussed, much less agreed. (Samay Dec. Ex. 62 at 44:4-45:9; Segaran Dec. ¶6.) There is nothing in the contract (which was executed in 2014, a year before Betty's pitch) that specifically references the 2016 Super Bowl pitch at all. (Samay Dec. Ex. 23.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 50**

Betty disputes in part. The Services Agreement was an umbrella contract and Section 7 of the Services Agreement requires PepsiCo to negotiate a SOW if it wants to make use of particular Betty creative work product. Samay Dec. Ex. 23.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 50**

Construction of contract language is a matter of law. There is no stated obligation to negotiate–and Betty admits this. Samay Dec. Ex. 62 at 127:12-128:12, Ex. 23 It cannot read the unstated obligation to negotiate into other provisions. In addition, Betty admits that there is no obligation without a SOW. S.F. ¶¶ 51, 53.

**DEFENDANT'S STATEMENT NO. 52**

Betty's complaint said that Pepsi needed a contract "if it wanted to acquire 'all right, title and interest'" in Betty's work. (D.I. 52 at 17.) Betty alleged that "PepsiCo breached the Services Agreement it made with Betty by not working in good faith with Betty to enter into a Scope of Work with Betty once it decided to use Betty's work product." (Samay Dec. Ex. 22.) Betty's CEO and 30(b)(6) witness testified that there is not "any provision in the contract that requires Pepsi to negotiate with Betty" toward any new Scope of Work. (Samay Dec. Ex. 61 at 127:12-128:12, Ex. 23.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 52**

Betty disputes in part. Section 7 of the Service Agreement does not require PepsiCo to negotiate with Betty toward a new SOW, unless PepsiCo wanted to use particular Betty creative work product. Samay Dec. Ex. 23.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 52**

Construction of contract language is a matter of law.  There is no obligation to negotiate stated in Section 7 — or anywhere else.  Samay Dec. Ex. 23; Samay Dec. Ex. 62 at 127:12-128:12.  It cannot read the unstated obligation to negotiate into other provisions.  In addition, Betty admits that there is no obligation without a SOW.  S.F. ¶¶ 51, 53.

**DEFENDANT'S STATEMENT NO. 53**

No material terms for any new Scope of Work concerning use of Betty's Super Bowl work product were ever discussed, much less agreed.  (Segaran Dec. ¶6; Samay Dec. Ex. 62 at 44:4-45:9.)  Because Pepsi was "not interested in the concept and did not intend to use any of Betty's work relating to the concept," they "did not seek to engage Betty in any way.  There was never any discussion with Betty about acquiring or using the work and we did not ever discuss any terms for doing."  (Segaran Dec. ¶6.)  Betty has specifically admitted that the parties never negotiated about "price" or even "what the deliverable would look like."  (Samay Dec. Ex. 62 at 45:2-9.)  Those terms were left for negotiation in a Statement of Work.  (Samay Dec. Ex. 62 at 40:6-15.)  Mr. Pascarelli Jr. testified that the parties would not be bound without a Scope of Work, because "that was their rule in the contract."  (Samay Dec. Ex. 62 at 62:22 – 63:7, 68:4-13, 71:9-23.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 53**

Betty disputes in part. The evidence of feedback and suggestions made by PepsiCo employees and agents to TMA that "elevated" TMA's concept brought the TMA concept in line with Betty's "All Kinds/Living Jukebox" and evidence the fact

that PepsiCo (through its employees and/or agents) was interested in the concept and did intend to make use of Betty's creative work product.  Gregory Dec. Ex 56.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 53

No genuine of material fact exists.  Betty admits the material in Statement 53 and makes unrelated statements.  It does not specifically identify any dispute with Pepsi's stated facts or evidence.  Pepsi disagrees with the extraneous Betty statements which are not material.  Nothing in the record refutes Ms. Segaran's testimony that Pepsi was not interested in Betty's work and Betty does not provide any evidence that supports that Pepsi was interested in Betty's concept.

## DEFENDANT'S STATEMENT NO. 54

Betty failed to provide a calculation of damages for either of its claims.  (Samay Dec. Ex. 67.)  In its answer to Pepsi's interrogatories seeking a calculation of copyright damages, Betty stated that "Betty has not completed its computations of damages; this response will be supplemented when such computation has been completed."   (Samay Dec. Ex. 69.)  In its response to Pepsi's interrogatories seeking a calculation of contract damages, Betty responded that "Betty has not yet completed its computations of damages but expects that such computation will form part of its expert disclosures."  (Samay Dec. Ex. 71.)  Neither interrogatory response was ever supplemented.  (Samay Dec. ¶¶ 23, 25.)  Fact discovery closed on November 9, 2018 and expert discovery closed on December 21, 2018.  (D.I. 68 at ¶¶ 5.a., 6.a.)  Betty did not serve an expert report or otherwise make any expert disclosure.  (Samay Dec. ¶31.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 54

Betty disputes in part. Betty's copyright claims implicate statutory remedies. The record evidence in the case reveals the fee PepsiCo and Betty negotiated for lower-

profile project and the fees PepsiCo and TMA negotiated for the 2016 Super Bowl commercial. By being deprived of the recognition associated with being known as the creator of the PepsiCo Super Bowl commercial, Betty sustained a loss of the fee it would have earned (which would have included a percentage of production costs). In addition, Betty would not have lost the opportunity to work with the other brands (MOUNTAIN DEW, PEPSI MAX, AMP AND LIPTON) that were familiar with and loved Betty's work. Gregory Dec. Ex. 24, 25, 26, 27, 36.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 54

No genuine issue of material fact exists. Betty does not dispute that it failed to provide calculation of damages for either of its claims. Betty merely supplements its statement with unsupported extraneous opinions which are disputed and not material to resolution of the motion. Given that the registration date of the copyright at issue is after the accused infringement, there are no statutory damages available. Samay Dec. Ex. 33, S.F. ¶174. Betty presents no quantification of any of its speculative statements of opinion above.

## DEFENDANT'S STATEMENT NO. 56

"Now and Then" contained Britney Spears singing and dancing through various eras. (Phillips Dec. Exh. A, § III.A.2; Samay Dec. ¶ 10, Ex. 34, Ex. 61 at 93:4-96:2, 101:4-9, 105:24-106:23, Exs. 72-73 at Nos. 94-95, 100-110, 118-124, Exs.74-75.) It included: "Britney Spears as the hero character"; "genres of music changing"; "wardrobe changed as the eras and genre changed"; "dancing changes"; and at least one "clean cut." (Samay Dec. Ex. 61 at 93:24-94:5, 101:4-9, 106:8-16, 107:8-21.)



**PLAINTIFF'S RESPONSE TO STATEMENT NO. 56**

Betty disputes in part.  Because the "Now and Then" spot did not employ the device of doorways of change, seamless cuts to create one continuous shot of a changing environment, used different cast members, it created a distinct feel and therefore its existence does not represent a material fact. Samay Ex. 34.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 56**

No genuine issue of material fact exists.  Betty does not dispute that the "Now and Then" spot includes the elements described in Defendant's statement. Betty merely lists unsupported extraneous opinions regarding the commercial.  The elements referenced in Defendant's statement, and not disputed by Betty, are material as elements that Pepsi had used previously. The extraneous statements of Betty are not material to resolution of the case.  Moreover, the accused commercial also includes the use of some different background cast members between scenes.

**DEFENDANT'S STATEMENT NO. 57**

"Now and Then" started in a diner with a jukebox.  (Phillips Dec. Ex. A at III.A.2.ii.5, Ex. B.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 57**

Betty disputes in part. Because the "Now and Then" spot did not employ the device of doorways of change, seamless cuts to create one continuous shot of a changing environment, used different cast members, it created a distinct feel and therefore its existence does not represent a material fact. Samay Ex. 34.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 57**

No genuine issue of material fact. Betty does not dispute that the "Now and Then" spot includes the elements described in Defendant's statement. Rather, Betty merely lists unsupported extraneous opinions regarding the commercial which are not material to resolution of the case and are disputed. The element of the juke box referenced in Defendant's statement, and not disputed by Betty, is material as elements that Pepsi had used previously.

**DEFENDANT'S STATEMENT NO. 58**

Pepsi previously aired (before 2015) the commercial known as "Pass" or "Bottle Pass" contained on Exhibit 34 to the Samay Declaration. (Phillips Dec. Exh. A, § III.A.2; Samay Decl. ¶¶ 10, Ex. 34, Exs. 72, 73 at Nos. 132-138.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 58**

Betty disputes in part. Because the "Bottle Pass" spot does not feature a hero character, doorways, the cast changes, does not take place in a singular space and therefore its existence does not represent a material fact.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 58

No genuine issue of material fact. Betty does not dispute that Pepsi had previously aired the commercial known as "Bottle Pass." Rather, Betty merely lists unsupported extraneous opinions regarding the commercial, and its statements are not material. Pepsi's prior commercials are material to show elements previously employed by Pepsi.

## DEFENDANT'S STATEMENT NO. 59

Pepsi previously aired (before 2015) the commercial known as "Diner" contained on Exhibit 34 to the Samay Declaration. (Phillips Dec. Ex. A at III.A.2.ii.5; Samay Dec. Ex. 34.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 59

Betty disputes in part. Because the only element of the "Diner" spot of any relevance is the use of a jukebox, it has a feel that is entirely dissimilar to Betty's "All Kinds/Living Jukebox" and to the commercial PepsiCo aired during the 2016 Super Bowl and therefore does not represent a material fact. Samay Ex. 34.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 59

No genuine issue of material fact. Betty does not dispute that Pepsi had previously aired the commercial known as "Diner." Rather, Betty merely lists unsupported extraneous opinions regarding the commercial, and its statements are not material to resolution of the case. Pepsi's prior commercials are material to show elements previously employed by Pepsi.

## DEFENDANT'S STATEMENT NO. 60

The "Diner" commercial also started in a diner with a jukebox. (Phillips Dec. Ex. A at III.A.2.ii.5; Samay Dec. Ex. 34.)



**PLAINTIFF'S RESPONSE TO STATEMENT NO. 60**

Betty disputes in part. Because the only element of the "Diner" spot of any relevance is the use of a jukebox, it has a feel that is entirely dissimilar to Betty's "All Kinds/Living Jukebox" and to the commercial PepsiCo aired during the 2016 Super Bowl and therefore does not represent a material fact. Samay Ex. 34.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 60**

Betty does not dispute that Pepsi's previous commercial "Diner" started in a diner with a jukebox. Rather, Betty merely lists unsupported extraneous opinions regarding the commercial, and its statements are not material. Pepsi's prior commercials are material to show elements previously employed by Pepsi.

**DEFENDANT'S STATEMENT NO. 61**

The Marketing Arm and Betty both presented pitches to Pepsi on November 6, 2015. (Samay Dec. Ex. 63 at 48:13-15, Ex. 61 at 11:23-25; Gilbar Dec. ¶ 9, Ex. C.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 61**

Betty does not dispute; however, it notes that a key PepsiCo decisionmaker, Barry Rosen, had no memory of TMA presenting on November 6, 2015. Gregory Dec. Ex. 81 [Rosen Tr] at 109:2-11.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 61**

No genuine issue of material fact. Pepsi notes that the memory of Barry Rosen is not material to resolution of the case. Mr. Rosen's lack of recollection re a specific presentation several years ago (in 2015) is not evidence that it did not occur. Documentary evidence and the testimony of every other witness present confirm that it occurred

**DEFENDANT'S STATEMENT NO. 62**

The Marketing Arm's Pitch on November 6, 2015 was created without access to Betty's Pitch materials or concepts presented that same day. (Samay Dec. Ex. 63 at 45:9-12, 46:10-47:6; Gilbar Dec. ¶¶ 16-17.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 62**

Betty disputes. For the reasons indicated (and the evidence presented) in response to Statement Nos. 17 and 19, the authenticity of the TMA pitch deck dated November 6, 2015 is uncertain.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 62**

No genuine issue of material fact exists. Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement Nos. 17 and 19.

**DEFENDANT'S STATEMENT NO. 66**

By November 7, 2015, The Marketing Arm had refined the script of its pitch and Marc Gilbar circulated his changes internally on November 7, 2015 as reflected in ¶11 of his Declaration and Exhibit E attached thereto. (Gilbar Dec. ¶ 11, Ex. E.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 66**

Subject to the authenticity issue described (and the evidence presented) in response to Statement Nos. 17 and 19, Betty does not dispute.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 66**

No genuine issue of material fact exists. Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement Nos. 17 and 19.

**DEFENDANT'S STATEMENT NO. 67**

The refinements made by Mr. Gilbar as described in his Declaration at ¶¶11-13 and Exhibit E attached thereto were made without access to Betty's Pitch or any other information concerning Betty's All Kinds/Living Jukebox concept. (Gilbar Dec. ¶¶15-17, Ex. D; Segaran Dec. ¶ 8.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 67**

Betty disputes. E-mails between PepsiCo employees and agents and TMA and internal at TMA indicate that TMA had an inside connection at PepsiCo providing it information and that TMA was getting "great" feedback from PepsiCo that would "really elevate the spot." Gregory Dec. Ex. 56 These facts, together with the fact that changes were made from the initial TMA pitch book caused the commercial to evolve to a point of

substantial similarity to "All Kinds/Living Jukebox" support the inference that changes were made on the basis of access to Betty's creative work product from PepsiCo employees and agents who were present for, and received, Betty's concept.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 67

No genuine issue of material fact exists. Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement Nos. 17. Moreover, feedback provided November 17 is not material to whether feedback was provided before the revised pitch was created on November 7 and delivered to Pepsi on November 9.

## DEFENDANT'S STATEMENT NO. 68

On November 9, 2015, The Marketing Arm sent their Revised Pitch to Pepsi as reflected in Exhibit F to the Gilbar Declaration. (Samay Dec. ¶ 5, Ex. 9, Ex. 63 at 74:14-18; Segaran Dec. ¶ 9, Ex. D; see also Gilbar Dec. ¶¶ 11-14, Ex. F.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 68

Subject to the authenticity issue described (and the evidence presented) in response to Statement Nos. 17 and 19, Betty does not dispute.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 68

No genuine issue of material fact exists here. Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement No. 17.

**DEFENDANT'S STATEMENT NO. 69**

The Marketing Arm's Revised Pitch was created without access to Betty's Pitch or any other information concerning Betty's All Kinds/Living Jukebox concept. (Gilbar Dec. ¶¶15-17, Ex. D; Samay Dec. Ex. 63 at 17:10-12, 87:10-12, 89:22-25; Segaran Dec. ¶ 8.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 69**

Betty disputes. E-mails between PepsiCo employees and agents and TMA and internal at TMA indicate that TMA had an inside connection at PepsiCo providing it information and that TMA was getting "great" feedback from PepsiCo that would "really elevate the spot." Gregory Dec. Ex. 56 These facts, together with the fact that changes were made from the initial TMA pitch book caused the commercial to evolve to a point of substantial similarity to "All Kinds/Living Jukebox" support the inference that changes were made on the basis of access to Betty's creative work product from PepsiCo employees and agents who were present for, and received, Betty's concept.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 69**

No genuine issue of material fact exists. Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement Nos. 17. Moreover, Betty offers no evidence to suggest that the feedback was based on Betty's work. Feedback provided November 17 is not material to whether feedback was provided before the revised pitch was created on November 7 and delivered to Pepsi on November 9.

**DEFENDANT'S STATEMENT NO. 71**

The Marketing Arm produced its Revised Pitch into the Commercial.  (Gilbar Dec. 15-18.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 71**

Betty disputes.  Considerable changes were made to the Revised Pitch to produce the aired commercial.  Samay Ex. 34.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 71**

No genuine issue of material fact exists.  Betty fails to cite to any evidence to refute Defendant's statement.

**DEFENDANT'S STATEMENT NO. 73**

Jayanthi Segaran confirmed that the Britney Spears commercial "Now and Then" was the principal inspiration for the Commercial.  (Samay Dec. Ex. 64. at 182:19 – 184:10, 187:1-188:1.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 73**

Betty disputes. The cited evidence does not support the stated proposition and, as noted in response to other Statements, there are considerable differences between the two commercials. Samay Ex. 34.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 73**

No genuine issue of material fact exists.  Betty does not dispute that Britney Spears was the principal inspiration even if some differences existed and does not deny that the testimony was provided.

**DEFENDANT'S STATEMENT NO. 74**

"Now and Then", like the Commercial, featured a female performer as the lead, different scenes, where each scene focused on a different time period, and highlighted era-appropriate music, wardrobe, dance and vibe.  (Samay Ex. 34, Ex. 61 at 93:4-96:2, 101:4-9, 105:24-106:23.)





**PLAINTIFF'S RESPONSE TO STATEMENT NO. 74**

Betty disputes in part.  The "Now and Then" commercial did not employ the device of one continuous shot or doorways being the agent for a hero to navigate one continuous environment, used different background cast members in each scene and evoked for the viewer a different feel.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 74**

No genuine issue of material fact exists.  Betty does not dispute that the "Now and Then" spot includes the elements described in Defendant's statement.  Betty merely lists unsupported extraneous opinions regarding the commercial, which are not material to resolution of the case.

## DEFENDANT'S STATEMENT NO. 75

After the Commercial aired, the industry instantly recognized it as an homage to the previous Britney Spears' "Now and Then" commercial.  (Phillips Dec. Ex. A at III.A.2.i; Samay Dec. Exs. 74-75.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 75

Betty disputes. Citing two articles does not qualify as a sufficient basis for the broad statement that "the industry recognized." Nor do the articles imply copying and TMA did not believe "Joy of Dance" copied "Now and Then."  Gregory Dec. 85 [Meyer Tr] Ex. at 89:16-25.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 75

No genuine issue of material fact exists.  Betty's dispute as to the broad nature is not a material issue and it does not contest that some in the industry recognized and reported on the similarities between Pepsi's prior Now and Then commercial and the new Pepsi Commercial. Betty's statement of copying is not responsive and immaterial.

## DEFENDANT'S STATEMENT NO. 76

Betty acknowledged that the features of a hero character, genres of music changing, wardrobe changing as the eras and genre changed, dancing changes, and clean cuts were included in the previous Britney Spears' "Now and Then" commercial. (Samay Ex. 61 at 93:24-95:24, 101:4-9, 105:24-106:22, 107:8-21.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 76

Betty disputes in part. The "Now and Then" commercial did not employ the device of one continuous spot, used different cast members in each scene and created a distinct feel unlike the

distinct feel of Betty's "All K.inds/Living Jukebox;" therefore, the PepsiCo statement is not material. Samay Ex. 34.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 76

No genuine issue of material fact exists.  Betty does not dispute that the "Now and Then" spot includes the elements described in Defendant's statement.   Rather, Betty merely lists unsupported extraneous opinions regarding the commercial, which are not material to resolution of the case.   The elements referenced in Defendant's statement, and not disputed by Betty, is material as elements that Pepsi had used previously.

## DEFENDANT'S STATEMENT NO. 77

Betty further acknowledged that the Pepsi Commercial did not include numerous elements from Betty's Pitch, including a giant Brooklyn warehouse, a camera perspective of somebody walking into a warehouse, a man playing acoustic guitar, the "Joy of Pepsi" song in different genres, rap, jazz, swing, classical, or heavy metal music, a "lone singer with an Adele-like quality," an upright bass, a doo-wop/acapella crew, and a fire-lit in a trash can.  (Samay Dec. Ex. 61 at 41:21 – 42:14, 44:8-10, 50:19 – 51:13, 52:20 – 54:3; Exs. 72, 73 at Nos. 80-82, 84-88, 92-104.)

## PLAINTIFF'S RESPONSE TO STATEMENT NO. 77

This Statement is duplicative of Statement No. 43. Betty disputes in part because the Statement implies that each of the cited items were necessary elements to the Betty concept.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 77**

No genuine issue of material fact exists. Betty does not dispute that its pitch deck included the elements described in Defendant's statement, and that Pepsi's Commercial did not.

**DEFENDANT'S STATEMENT NO. 80**

Betty has not provided any calculation of damages for either of its claims. (Samay Dec. ¶¶ 23, 25, Exs. 69, 71.)

**PLAINTIFF'S RESPONSE TO STATEMENT NO. 80**

Betty disputes. Statutory remedies are available for the statutory claim.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT NO. 80**

No genuine issue of material fact exists. Betty does not dispute that it failed to provide calculation of damages for either of its claims. Given that the registration date of the copyright at issue is after the accused infringement, there are no statutory damages available. Samay Dec. 33, S.F. ¶174.

## PART II

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS

Betty has not made any assertion of any additional fact that is a material fact genuinely in dispute such that it could have an effect of the outcome of Pepsi's Motion for Summary Judgment. Pepsi's responses to Betty's extraneous facts (and/or opinions or conclusions of law) are as follows:

## PLAINTIFF'S STATEMENT NO. 82

The primary value advertising agencies bring to their clients lies in their ability to conjure creative storylines and unique and imaginative ways for portraying a product, communication a message, and using and assembling such things as music, dance, costumes, talent, visual images, shot angles and props to set how the flow of scene and message can occur in a 60, 30 or 15 second spot. Gregory Dec. Ex. 77 at 271:13-273:12.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 82

No genuine issue of material fact exists. Betty's statement is not one of fact, it is a generalized opinion not limited to the parties or events of this case. Further, Betty's statement does not implicate any material fact that could affect the resolution of this case. Pepsi denies Betty's statement because, among other reasons, the value of agencies will vary depending on the circumstances.

## PLAINTIFF'S STATEMENT NO. 83

To determine there is nothing protectable or of compensable value in an advertising agency's creative work simply because it includes basic elements like music and dance that can be broken apart into pieces would be tantamount to undermining an entire industry.

54

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 83**

No genuine issue of material fact exists. Betty's statement is unsupported by the record and is not a fact let alone a material one. Further, Betty's statement is not supported by law. *Peter F. Gaito Architecture, LLC v. Simone Development Corp*, 602 F.3d 57, 67 (2d Cir. 2010).

**PLAINTIFF'S STATEMENT NO. 84**

The competition to win PepsiCo's Super Bowl assignment did not take place on an even playing field. Gregory Dec. Ex. 53 p3.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 84**

No genuine issue of material fact exists. Betty's statement is ambiguous, is not a fact, and is not material. Betty fails to cite to any evidence that supports its statement. Pepsi disputes Betty's contention.

**PLAINTIFF'S STATEMENT NO. 85**

PepsiCo provided inputs and refinements to TMA throughout the entire development process that had the effect of evolving its "originally presented" storyline to a point of substantial similarity to Betty's presented creative work. Gregory Dec. 5, 34, 35.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 85**

Disputed. Betty's statement is not one of fact, it is a generalized opinion and/or a conclusion of law. Pepsi was involved with production of the commercial after the concept was created, pitched, and revised by TMA. Gilbar Dec. ¶¶ 11-13, 15-18. The remainder of Betty's statement is unsupported and contrary to the record. Pepsi denies that its Commercial is

"substantially similar" to Betty's work and states that The Marketing Arm independently created its pitches and the resultant commercial concepts.

## PLAINTIFF'S STATEMENT NO. 86

There were far more than "standard executional adjustments" from the initial TMA concept to the final product.  Gregory Dec. Ex. 5, 34, 35.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 86

No genuine issue of material fact exists.  Betty does not define what it means by standard executional adjustments and the statement is contrary to record evidence set forth by a producer of the commercial.  Gilbar Dec. ¶17; Phillips Dec. Ex. A at III.B.1 Betty fails to cite any evidence regarding the development of the commercial and offered no opinions in this case regarding executional adjustments.

## PLAINTIFF'S STATEMENT NO. 87

The final commercial was not at all a natural extension of the first concept TMA pitched. Samay Dec. Ex. 5, 34, 35.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 87

Betty's statement is contrary to record evidence.  Gilbar Dec. ¶¶16-17; Phillips Dec. Ex. A at III.B.1.  Betty fails to cite any evidence regarding the development of the commercial and it admits that key elements contained in the pitches of The Marketing Arm appear in the Commercial.  .

**PLAINTIFF'S STATEMENT NO. 88**

Betty became introduced to PepsiCo because Barry Rosen, the principal of an agency named Direct Focus, Inc., saw work Al Pascarelli, III, Betty's Chief Creative Officer, did for one of Betty's other clients. Gregory Dec. Ex. 77 [Al Pascarelli Tr at 185:21-24; Ex. 81 [Rosen Tr] at 54:4- 55:17.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 88**

Pepsi does not dispute.  The introduction is not a material fact.

**PLAINTIFF'S STATEMENT NO. 89**

Rosen has had a decades long relationship with PepsiCo and he has been intimately involved in numerous substantial campaigns for PepsiCo brands (including PEPSI) over the years. Gregory Dec. Ex. 81 [Rosen Tr] at 43:17-19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 89**

No genuine issue of material fact exists.  Barry Rosen's relationship to Pepsi is not a material fact.

**PLAINTIFF'S STATEMENT NO. 90**

The role Rosen plays with PepsiCo commercials spans from managing the creative presentation process to providing input to concept selection decisions to working with PepsiCo in creating and refining story boards to directing the technical production of the spots. Gregory Dec. Ex. 79 [Segaran Tr] at 39:1-14.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 90**

No genuine issue of material fact exists. Barry Rosen's relationship to Pepsi is not a material fact.

**PLAINTIFF'S STATEMENT NO. 91**

Rosen reached out to Al to invite him to work on a project for PepsiCo's MOUNTAIN DEW brand. Gregory Dec. Ex. 82 [Al Pascarelli Tr] at 18:3-11, 28:19-29:7, 183:21-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 91**

No genuine issue of material fact exists. The way in which Betty was asked to work on an unrelated project is not material.

**PLAINTIFF'S STATEMENT NO. 92**

PepsiCo requires advertising agencies wanting to do business with it to make a Creative Agency Services Agreement with its affiliate Pepsi-Cola Advertising & Marketing, Inc. ("PCAM"). Gregory Dec. Ex. 82 [Carr Tr] at 12:20-13:3, 13:22-14:2.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 92**

The cited evidence does not support Betty's proposition that PepsiCo requires advertising agencies to make an agreement with PCAM but rather that if an agreement is made then PCAM is always the contracting party. Gregory Dec. Ex. 82 [Carr Tr] at 12:20-13:3, 13:22-14:2. Pepsi does not always require the agreement referenced.

**PLAINTIFF'S STATEMENT NO. 93**

Betty and PCAM made such an agreement dated as of November 11, 2014 ("the Agreement"). Samay Dec. Ex 23; Gregory Dec. Ex. 82 [Carr Tr] at 12:9-13:3, 13:18-21, 17:9-16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 93**

Pepsi does not dispute that Ex. 23 was entered by and among the parties named.

**PLAINTIFF'S STATEMENT NO. 94**

Al is the only Betty employee who makes client presentations.  Gregory Dec. Ex 77 [Al Pascarelli Tr] at 9:8-10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 94**

No genuine issue of material fact exists.  Betty's statement does not implicate any material fact that could affect the resolution of the case.

**PLAINTIFF'S STATEMENT NO. 95**

Al's brother Justin Pascarelli ("Justin") often attends the pitch presentations to "take the temperature of the room" and therefore assume the role of facilitator between Al and the Betty client.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 95**

No genuine issue of material fact exists.  Betty's statement is unsupported by any citation to the record, is beyond Pepsi's knowledge and does not implicate any material fact that could affect the resolution of the case.

**PLAINTIFF'S STATEMENT NO. 96**

The Agreement serves as a master or umbrella agreement providing the framework for specific projects the parties undertake.  Samay Dec. Ex. 23.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 96**

No genuine issue of material fact exists.  Betty has provided no evidence to support that the agreement serves as a master or umbrella agreement.  Moreover, construction of contract language is a matter of law.  SOW's create contract terms for projects if and when Pepsi awards a project and enters into a SOW.  Samay Dec. Ex. 23.  The agreement is not a framework for unawarded and uncontracted matters.

**PLAINTIFF'S STATEMENT NO. 97**

The contract is very one-sided in favor of PepsiCo in respect of the respective obligations it sets for the parties.  Samay Dec. Ex. 23; Gregory Dec. Ex 82 at 29:23-30:7, 33:14,-19, 34:2-5.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 97**

Pepsi disputes because "the contract" is ambiguous and the statement is an opinion, not a fact.  There is no contract with Betty regarding the Pepsi Super Bowl commercial.  If "the contract" refers to Services Agreement (which incorporates fully executed SOWs), it is not very one-sided.  Samay Dec. Ex. 23.

**PLAINTIFF'S STATEMENT NO. 98**

Among other things, the Agreement: (a) prohibited Betty from soliciting or accepting any assignment for a product or service that competes with a PepsiCo product or service; (b) required Betty to maintain certain books and records and allowed PCAM to conduct and audit of such

books and records; (c) imposed certain broad confidentiality restrictions on Betty; (d) established an indemnification obligation on Betty; and (e) required Betty to procure and maintain substantial insurance naming PepsiCo as a Loss Payee or Additional Insured.  Samay Dec. Ex. §§3, 9, 10, 11, 14.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 98**

No genuine issue of material fact exists.  Betty's statement does not implicate any material fact that could affect the resolution of the case.  Moreover, construction of a contract is a matter of law and contract terms speak for themselves.  Betty's characterization is not accurate. For example, Betty is not prohibited from taking work from competing companies, but must follow contract provisions and get clearance to do so Ex. 23 at ¶3.  Section 3 is also not material, as Betty never sought Pepsi's permission to represent a competing company. Samay Dec. Ex. 94 at 46:9-48:13.  The remaining provisions are also not material to the extent they only apply to projects with existing SOWs.  In addition, the provisions would exist regardless of whether Betty ever pitched Pepsi in November of 2015.

**PLAINTIFF'S STATEMENT NO. 99**

The Agreement did not require PepsiCo to work with Betty as the relationship was non-exclusive (*i.e.,* PepsiCo could work with other agencies) and PepsiCo maintained the right, in its sole discretion, to place orders or to decide not to place orders with Betty.  Samay Dec. Ex 23 §1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 99**

Construction of contract language is a matter of law and the contract terms speak for themselves.  Pepsi does not dispute that it had the sole discretion to decide to work with vendors and whether or not to negotiate with and contract with such vendors.

**PLAINTIFF'S STATEMENT NO. 100**

The consideration Betty got from PCAM in return was significant- the opportunity to secure a Scope of Work ("SOW") commitment if and whenever PepsiCo wanted to use the output of Betty's creative efforts on a project. Samay Dec. Ex. 23 §57.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 100**

Construction of contract language is a matter of law and the contract terms speak for themselves. Moreover, Betty's statement is not one of fact, it is a generalized opinion not limited to the parties and events in this case. Betty's statement does not implicate any material fact that could affect the resolution of the case. Further, to the extent the statement contravenes Pepsi's sole discretion regarding negotiating and enforcing contracts, the statement is inaccurate.

**PLAINTIFF'S STATEMENT NO. 101**

With a SOW and payment of the negotiated fee, PCAM would then own all rights to the produced creatives. The corollary is that no transfer of rights would occur in the absence of the SOW that the Agreement contemplated and mandated. Samay Dec. Ex. 23§7 ("Subject to PCAM's payment of all amounts owed for the Deliverables [defined in the SOW] pursuant to the Scope of Work, PCAM shall own all right, title, and interest in and to the Deliverables [.]").

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 101**

No genuine issue of material fact exists. Construction of contract language is a matter of law and the contract terms speak for themselves. Betty fails to provide any evidence to support their opinion which they have labeled "[t]he corollary." Betty's statement does not implicate any

material fact that could affect the resolution of the case.  And, Betty ignores other provisions in Services Agreement regarding ownership. Samay Dec. Ex. 23 at ¶7.

**PLAINTIFF'S STATEMENT NO. 102**

The parties first used the Agreement with a project for PepsiCo's MOUNTAIN DEW brand.  Gregory Dec. Ex. 24.  As mandated by the agreement, PepsiCo and Betty made a SOW to define the scope of the assignment and the fee to be paid.  By making the SOW related to the two commercials Betty created and paying the negotiated fee, PepsiCo acquired all rights, title and interest (including copyright rights) to Betty's work.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 102**

No genuine issue of material fact exists.  Pepsi does not dispute the parties entered agreements regarding a MOUNTAIN DEW project or that Pepsi owned all rights, title and interest to Betty's work.  To the extent Betty's statement goes beyond the above, Pepsi disputes and states that construction of contract language is a matter of law and the contract terms speak for themselves.

**PLAINTIFF'S STATEMENT NO. 103**

Betty also worked on a project for the PEPSI MAX brand.  Gregory Dec. Ex. 25, 26.  Once again, in May 2015, the parties made SOWs for the project (Gregory Dec. Ex 25 and 26) and, with Betty's creative efforts, two commercial spots were made and aired.  Pursuant to the Services agreement and the SOWs, PepsiCo owned all rights to Betty's work produce for those projects because it paid the defined fee.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 103**

No genuine issue of material fact exists. Pepsi does not dispute the parties entered agreements regarding a PEPSI MAX project or that Pepsi owned all rights, title and interest to Betty's work. To the extent Betty's statement goes beyond the above, Pepsi disputes and states that construction of contract language is a matter of law and the contract terms speak for themselves.

**PLAINTIFF'S STATEMENT NO. 104**

At PepsiCo's request, Betty pitched a script for a commercial for the LIPTON Sparkling Iced Tea brand. The LIPTON Sparkling Iced Tea product is a joint venture of PepsiCo and Unilever; PepsiCo was the key point for brand marketing and concept selection. Gregory Dec. Ex. 81 at 57:15-21. The pitch was well received yet the brand team suddenly stopped all contact and discussion with Betty. Several months later, and just by happenstance based on an Internet search, Betty discovered that PepsiCo had taken the script and produced an online commercial using it almost verbatim. Gregory Dec. Ex. 77 [Pascarelli Tr] at 148:2-7, 290:22-297:12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 104**

No genuine issue of material fact exists. LIPTON is a joint venture between Pepsi and Unilever. The dealings regarding an unrelated project are not material to resolution of this case. And the terms and provisions governing the LIPTON project are not before the Court. Pepsi further states that Betty was paid in full for its work on the project. Samay Dec. Ex. 93 at 63:22-64:17.

**PLAINTIFF'S STATEMENT NO. 105**

When confronted with the fact of PepsiCo's theft, Rosen expressed disgust with what had been done and the view that Al had every right to be upset.  Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 148:2-7, 290:22-297:12 Ex. 81 [Rosen Tr] at 60:6-61:25.  Through Rosen, PepsiCo offered a fee (a fee that ended up being less than originally promised) which Betty felt it had no choice but to accept (either accept the fee or sue and never work for PepsiCo again).  Gregory Dec. Ex. 77 at 148:2-7, 290:22-297:12 Ex. 81 [Rosen Tr] at 63:2-64:1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 105**

While it is unclear what Betty is referencing, PepsiCo disputes any such alleged "theft" and disputes any suggestion that Betty was not paid in full for its work.  Samay Dec. Ex. 93 at 63:22-64:17.  Moreover, no genuine issue of material fact exists.  The dealings of an unrelated project are not material to resolution of the case.  Further, Betty's statement is not one of fact, it is a generalized opinion.

**PLAINTIFF'S STATEMENT NO. 106**

Rosen claimed he wanted Betty to create new material for the brand, but, he claimed, the brand manager, Melanie Watts, had after the incident become hostile to Betty because she had been caught red-handed using Bettys's script without paying for it.  Allegedly as a result of Watt's attitude, Rosen suggested Betty team up with Rosen's daughter and ghostwrite the creative concepts, which would be submitted to the LIPTON brand team under her name.  The fees received for such projects would be shared (not equally but in favor of his daughter).  The "suggestion" by Rosen was more than a suggestion; it was a threat that if Betty did not follow his "suggested" path, he would use his considerable influence and authority to ensure that Betty

would never again have the opportunity to work on PepsiCo matters for the brands he worked with.  Gregory Dec. Ex. 77 [Pascarelli Tr] at 148:2-7, 290:22-297:12, Ex. 83 [Justin Pascarelli Tr] at 31:20-33:21, 66:4-68:15, 70:5-71:2.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 106

Disputed and not material to the issues in this case or in the motion before this Court. Betty's statement is not one of fact, it is a generalized opinion and is not limited to the parties and events of this case.  Betty's statement includes hearsay statements that are contrary to record evidence.  Samay Dec. Ex. 92 at 69:21-10.  Moreover, Betty's statements are contrary to the suggestion that Rosen would prevent future work with Pepsi.  In fact, it is Rosen who suggested letting Betty pitch for the Super Bowl Commercial.  (Plaintiff's Statement No. 91.)  Betty's statement is contrary to Betty's own statements which indicated they worked with Ms. Rosen. Samay Dec. Ex. 90 at 191:8-19.

## PLAINTIFF'S STATEMENT NO. 107

Betty declined the offer.  Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 148:2-7, 290:22-297:12.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 107

No genuine issue of material fact exists.  Betty's statement is ambiguous as to what "offer."  The dealings of an unrelated project are not material to resolution of the case.

## PLAINTIFF'S STATEMENT NO. 108

In October 2015, PepsiCo's AMP brand managers advised Betty that it had won a multiagency pitch to be the agency of record for (Gregory Dec. Ex. 77 [Al Pascarelli Tr] at

198:23-200:13).   Unfortunately for Betty, those managers changed their minds (or were instructed to change their minds) and decided to "go in a different direction" after Betty raised the issues of the Super Bowl commercial raised in this case.  Interestingly, notwithstanding the change of direction, PepsiCo still attempted to purchase Betty's ideas, but for a nominal fee that Betty declined.   Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 202:12-205-19; Ex. 83 [Justin Pascarelli Tr] at 35:2-37:15.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 108

Pepsi disputes.   Betty conveyed all rights regarding AMP.   Samay Dec. Ex. 27. Regarding the decision not to work with Betty, Betty had sued Pepsi and deciding not to work with litigation adversaries was not unexpected.  Samay Dec. Ex. 95 at 139:6-12.  No genuine issue of material fact exists here.  The dealings of an unrelated project are not material and what would have happened in the absence of this dispute is speculation.   Betty cites to no documentation of any award of work and such alleged agreement is denied.

### PLAINTIFF'S STATEMENT NO. 109

The importance of the Super Bowl to advertisers given the widescale attention it garners from football fans and non-football fans alike cannot be questioned.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 109

No genuine issue of material fact exists.  Betty's statement is not one of fact, but is a generalized opinion not limited to the parties or events in this case.  Moreover, Betty's statement does not implicate any material fact that could affect resolution of this case.  Still further, the importance to advertisers varies significantly and it can be questioned whether there is any value to some companies.

**PLAINTIFF'S STATEMENT NO. 110**

PepsiCo has long recognized the advertising reach of the SuperBowl telecast and has worked hard to be associated with the event because it is believed to represent the center of a pop culture moment.  Gregory Dec. Ex. 80 [Danzi Tr] at 12:3-10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 110**

No genuine issue of material fact exists.  The evidence Betty cites does not support Betty's statement beyond that the Super Bowl "obviously has a large audience," and Pepsi "has been proud to be a sponsor of the halftime show."  Samay Dec. Ex. 92 at 12:3-10.

**PLAINTIFF'S STATEMENT NO. 111**

PepsiCo has been the title sponsor of the extremely high profile Super Bowl halftime show, which features well-known musical entertainers, since June 2012.  Gregory Dec. Ex. 80 [Danzi Tr] 12:3-10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 111**

No genuine issue of material fact exists.  The evidence Betty cites does not support Betty's statement, but Pepsi has been a sponsor and has featured well-known musical entertainers in its prior advertising.  Samay Dec. Ex. 92 at 12:3-10.

**PLAINTIFF'S STATEMENT NO. 112**

After initially soliciting proposals for the Super Bowl commercial in two different rounds from agencies it regularly used, because the initial ideas did not test well, PepsiCo prepared a Brief to solicit new creatives from an additional group of advertising agencies.  Gregory Dec. Ex. 79 [Segaran Tr] at 34:25-35:9, 44:21-48:3; Ex. 78 [Arbetter Tr] at 43:8-14; Ex. 1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 112**

Pepsi does not dispute.

**PLAINTIFF'S STATEMENT NO. 113**

Because it rejected the initial proposals, PepsiCo was behind schedule and at least one top exec expressed that the status of the commercial caused his "highest level of anxiety." Gregory Dec. Ex. 42.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 113**

No genuine issue of material fact exists. First, the expression of a Pepsi executive is not material to the claims at issue in the case. Here, the testimony was that management might be using that expression to keep the pressure on the team to deliver quality work product. Samay Dec. Ex. 64 at 56:2-58:12. Second, the evidence cited by Betty does not support that it was "the status" as it relates to being "behind schedule" that contributed to any anxiety. Moreover, Pepsi had plenty of time to conduct multiple pitches, select, test and produce the commercial. Samay Dec. Ex. 91 at 33: 20-34:10.

**PLAINTIFF'S STATEMENT NO. 114**

On October 29, 2015, Arbetter instructed Jayanthi Reja Segaran ("Segaran") to invite Betty and a number of other agencies to join a telephone briefing for the next day for the Super Bowl spot. Gregory Dec. Ex. 43.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 114**

Pepsi does not dispute.

**PLAINTIFF'S STATEMENT NO. 115**

Segaran was a director of NFL-related creative communications and marketing for the PEPSI brand and she was PepsiCo's point person for developing the commercial PepsiCo would air leading into the halftime show of the 2016 Super Bowl. Gregory Dec. Ex. 79 [Segaran Tr] at 18:17-25; Ex. 78 [Arbetter Tr] at 48:16-22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 115**

Pepsi does not dispute.

**PLAINTIFF'S STATEMENT NO. 116**

During the October 30, 2015 briefing, Segaran provided direction and a general outline of what PepsiCo wanted from creative presentations. TMA did not receive the e-mail invitation and did not join Segaran's telephone briefing. Gregory Dec. Ex. 11.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 116**

Pepsi does not dispute that at least one telephone briefing was provided and that TMA briefing occurred separately from some other agencies.

**PLAINTIFF'S STATEMENT NO. 117**

Working under the tight deadline PepsiCo imposed, Betty devoted its efforts to developing creative storylines for PepsiCo's consideration. Gregory Dec. Ex. 84 [Al Pascarelli, Jr. Tr] at 95:6-15.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 117**

Pepsi does not dispute that Betty presented the Betty Pitch consistent with the timeframe set for proposals – as did the other agencies invited to pitch.

**PLAINTIFF'S STATEMENT NO. 118**

Betty undertook those efforts based on the fact of the Services Agreement and the parties' prior working interactions by which a SOW would be negotiated, prepared and executed if PepsiCo liked a presented advertising storyline and wanted to move forward with providing and acquiring rights to it.  Samay Ex. 23.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 118**

No genuine issue of material fact exists.  Betty provides no contemporaneous evidence to support what Betty subjectively based its actions upon.  To the extent Betty's statement mischaracterizes the rights and obligations under the Services Agreement, Pepsi denies and states that the construction of contract law is a matter of law.  Further, the evidence is undisputed that Pepsi did not like Pepsi did not like Betty's presentation and did not want to move forward. Segaran Dec. ¶¶4, 6.

**PLAINTIFF'S STATEMENT NO. 119**

Betty met with the PepsiCo team (employees and agents) during the morning of Friday November 6, 2015 at PepsiCo's offices.  Al and Justin attended the meeting for Betty.  Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 8:20-22; Ex. 83 [Justin Pascarelli Tr] at 23:22-24, 50:4-51:3.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 119**

Pepsi does not dispute.

**PLAINTIFF'S STATEMENT NO. 120**

The PepsiCo attendees were Chad Stubbs, Arbetter, Rosen, Jennifer Danzi, Lon Schwear, Jessica Laponte, Diana Mitrea, Neil Goldberg, Salvadore Pardon and Segaran.  Gregory Dec. Ex. 83 [Justin Pascarelli Tr] at 85:21-87:16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 120**

Disputed and not material.  Samay Dec. Ex. 88.

**PLAINTIFF'S STATEMENT NO. 121**

Al presented eight (8) concepts in detail and distributed Betty-branded USB drives containing summary printed material so that it would be easily available for later review. Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 7:20-23; Ex. 83 [Justin Pascarelli Tr] at 87:17-88:22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 121**

No genuine issue of material fact exists.  Pepsi does not dispute that "Al presented eight (8) concepts."  Pepsi further does not dispute that Al distributed USB drives.

**PLAINTIFF'S STATEMENT NO. 122**

The work product Betty presented consisted of both the written presentation material Betty later registered with the U.S. Copyright Office and a detailed verbal description and articulation of the proposed storyline and presentation, including potential variations of it. Gregory Dec. Ex. 77 (Al Pascarelli Tr] at 15:3-20:11, 21:13-27:3, 54:21-57:13, 58:16-60:14, 62:3-65:5, 67:19-71:7.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 122**

Pepsi does not dispute that Betty's Pitch was provided and later registered. To the extent implied, verbal descriptions have not and never become part of the registered copyright and are not material to resolution of the case. Moreover, the cited evidence does not support that Betty detailed "potential variations" of the storyline proposed in the copyrighted Pitch.

**PLAINTIFF'S STATEMENT NO. 123**

Because he believed it to be his strongest creative, Al started his presentation by pitching the "All Kinds/Living Jukebox" concept, and he spent the most time on it. Gregory Dec. Ex. 77[Al Pascarelli Tr] at 12:6-13:6; Ex. 83 [Justin Pascarelli Tr] at 48:9-12, 52:25-53:16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 123**

No genuine issue of material fact exists. Al Pascarelli's opinion as to the strength of the concepts is not material to the claims at issue.

**PLAINTIFF'S STATEMENT NO. 124**

As he described it, consistent with the fact that it had two names, "All Kinds/Living Jukebox" set forth two related but distinct concepts that shared the same execution mechanic. In a nutshell, the commercial would feature a singer "hero character" (performer) moving from room to room; as the character passed into each new room, the doorway would be used to act as the precipice or agent of change for a completely new vibe (which included music genre changes, wardrobe changes of both the hero and the background characters, dance style changes, prop changes and set design changes – which would all be reflective and consistent with the new music). The overarching thematic is that the ad would be stitched together to appear as one

continuous seamless shot. As an example, the hero character walks through the door of one room wearing one outfit and emerges into the adjoining room in a new outfit reflective of a different music genre. The secondary characters from the previous room would now be in the new room also with new wardrobe, along with new action and props reflective of the new music. Gregory Dec. Ex. 77 [Al PAscarelli Tr] at 15:3-20:11, 21:13-27:3, 54:21-57:13, 58:16-60:14, 62:3-65:5, 67:19-71:7; Ex. 83 [Justin Pascarelli Tr] at 55:2-56:20, 57:8-58:20, 59:24-61:25;Ex. 21.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 124

No genuine issue of material fact exists. Betty fails to cite to any evidence that any of the descriptions were included in its copyrighted pitch. To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case and are not material to resolution of the case. The content of Betty's Pitch is reflected entirely within that documents and any descriptions, assertions or characterizations of that content inconsistent with the writing is expressly denied.

## PLAINTIFF'S STATEMENT NO. 125

With the All Kinds interpretation, a single song, PepsiCo's Joy of Cola, would be used throughout but with musical genre/style mixes to it, one new genre/style per new room, picking up exactly where the last version left off. Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 15:3-20:11, 21:13- 27:3, 54:21-57:13, 58:16-60:14, 62:3-65:5, 67:19-71:7

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 125

No genuine issue of material fact exists. Pepsi does not dispute that Betty's Pitch discloses one song and changing music genres in its described warehouse scene. Pepsi disputes

the existence of different "interpretations" as what is protected is the expression disclosed in Betty's Pitch. Betty fails to cite to any evidence that any of other descriptions were included in its copyrighted pitch. To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case and are not material to resolution of the case.

**PLAINTIFF'S STATEMENT NO. 126**

With the Living Jukebox interpretation, multiple songs would be used rather than just the Joy of Cola thus giving the notion of a jukebox springing to life as the hero and background performers perform to a different song (as a jukebox plays different songs) in each room. Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 15:3-20:11, 21:13-27:3, 54:21-57:13, 58:16-60:14, 62:3-65:5, 67:19-71:7.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 126**

No genuine issue of material fact exists. Betty fails to cite to any evidence that any of the descriptions were included in its copyrighted pitch. Further, Betty's copyrighted Pitch did not include any reference "to the notion of a jukebox springing to life as the hero and background performers perform to a different song (as a jukebox plays different songs) in each room." Samay Dec. Ex. 4. In fact, Betty's Pitch states "the song remains the same." Id. To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case and are not material to resolution of the case.

**PLAINTIFF'S STATEMENT NO. 127**

PepsiCo ended up producing both a Joy of Cola genre mashup only version as well as the Super Bowl aired multiple song version - - thus, PepsiCo actually produced <u>both</u> versions of

Betty's creative.  Gregory Dec. Ex. 49, 79 [Segaran Tr] at 202:16-203:9, 204:10-205:7, 207:8-24;

Ex. 85 [Meyer Tr] at 91:9-93:1.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 127

No genuine issue of material fact.  The second version is not accused in this case and was

never released.  D.I. 32; Samay Dec. Ex. 93 at 148:2-4.  Pepsi denies producing or airing either

"version."  Betty's work was not used at all and The Marketing Arm independently created the

concepts used by Pepsi.

## PLAINTIFF'S STATEMENT NO. 128

Al emphasized during his presentation that his creative did not depend on the specific

types of music listed (rock, rap, jazz/ swing, classical) or on the initial scene taking place outside

a warehouse facility ("Doesn't have to be a walkthrough of the warehouse."). Gregory Dec. Ex.

77 [Al Pascarelli Trl at 13:23-20:11, 21:13-22:24, 25:11-25.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 128

No genuine issue of material fact.  Arguing for scope including possibilities not discussed

only highlights that Betty's claims are generalized ideas.  To the extent Betty refers to oral

statements, such statements are not part of Betty's registered copyright at dispute in this case and

are not material to the issues in this case.

## PLAINTIFF'S STATEMENT NO. 129

The PepsiCo witnesses were unable to testify about the contents of Betty's presentation

even as to such basic things as the shape of the table(s) in the PepsiCo conference room and what

Al and Justin were wearing. One PepsiCo witness recalled that the concept involved the use of

ghosts and spirits - which it certainly did not --and that the Betty representatives were wearing blazers (they did not, and hoodies are not often confused with blazers). Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 28:19-21, 39:8-11; Ex. 80 [Danzi Tr] at 51:21-53:13, 55:18-56:1.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 129

No genuine issue of material fact exists.  Pepsi does not dispute that some witnesses were not able to recall certain details about meetings in 2015.  The fact that the Pepsi witnesses did not remember the clothes that the Betty presenters were wearing during their presentation is not material to resolution of the case.  Further, the fact that a Pepsi witness did not remember Betty's pitch content is not material to any of the claims at issue.

## PLAINTIFF'S STATEMENT NO. 130

The Betty concept described flexibility, labelled "Considerables" in the deck, because experience taught Al that changes often occur during execution, so it is better to not be pigeonholed at the outset with a particular celebrity, song, or style. Samay Ex. 34; Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 58:18-59:20, 67:19-68:17.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 130

No genuine issue of material fact.  The "flexibility" of the concept only further highlights that Betty's claims are generalized ideas.  While Pepsi cannot confirm what experience taught Al, it does not deny the existence of a section entitled "Considerables" in Bettys' Pitch.

## PLAINTIFF'S STATEMENT NO. 131

Clients are instructed to remain poker-faced during agency presentations. Notwithstanding that mindset, the PepsiCo team reacted favorably to Betty's work during Al's

presentation.  Gregory Dec. Ex.  83 [Justin Pascarelli Tr] at 131:3-23.  After Betty completed its November 6, 2015 presentation, Rosen followed the Pascarellis out of the room and down the hallway to congratulate them on the pitch and to suggest that they soon meet for dinner.  Gregory Dec. Ex. 81 [Rosen Tr] at 104:6-15, 104:23-105:2; Ex. 83 [Justin Pascarelli Tr] at 87:17-88:22.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 131

Betty fails to cite any evidence to support its opinion that "[c]lients are instructed to remain poker-faced during agency presentations" And the statement is not a fact, but the generalized opinion of Justin Pascarelli which is not confined, or relevant to, the events at issue in this case.  Mr. Rosen did not remember whether he had a conversation in the hallway with Betty after the presentation but only that it was likely as he is a "man of manners."  Samay Dec. Ex. 93 at 104:3-10.  Moreover, Betty's statement is not material to the claims at issue as there is no evidence to suggest, that even if Betty's statement were true, that it had any relation to the "All Kinds" pitch and was not in relation to the pitches that Pepsi asked Betty to refine: "Pepsi waterfall of Joy/Flop Joy and "Parallel Universe" which are not at issue in the case.  Gregory Dec. Ex. 39.

## PLAINTIFF'S STATEMENT NO. 132

It is fair to surmise that Rosen wanted to clear the air from his "ghostwrite for my daughter" effort because he realized there was a strong likelihood of PepsiCo awarding the Super Bowl project to Betty and that he might have to work with Betty on production of the spot. Gregory Dec. Ex. 83 [Justin Pascarelli Tr] at 87:17-88:22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 132**

No genuine issue of material fact.  Betty's statement is not a fact at all, but rather, an extraneous and speculative opinion of an interested witness.  Further, any past dealings between Rosen, Rosen's daughter, and Betty are wholly immaterial to the claims at issue in this case. Pepsi denies that there was a strong likelihood that it would award any work relating to the Super Bowl to Betty.  Betty's All Kinds/Living Jukebox concept was immediately eliminated from consideration because several observers did not like it and thought it was off-brand.  SF¶34.

**PLAINTIFF'S STATEMENT NO. 133**

When Rosen did meet the Pascarellis for dinner, he apologized for the ghost-writing threat and he acknowledged that Betty was right to have considered it to be a form of blackmail. Gregory Dec. Ex. 83 [Justin Pascarelli Tr] at 90:14-91:10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 133**

No genuine issue of material fact exists.  Any past dealings between Rosen, Rosen's daughter, and Betty are wholly immaterial to the claims at issue in this case.  The statement is disputed and inconsistent with Mr. Rosen's testimony.  Samay Ex. 93 at 69:21-70:10.

**PLAINTIFF'S STATEMENT NO. 134**

During the evening of November 6, 2015, Segaran contacted Al to request that refinements be made to two of the presented storylines and that the refinements be submitted by 9:00a.m. on Monday November 9, 2015. Gregory Dec. Ex. 39.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 134**

Pepsi does not dispute but notes that the statement is ambiguous as to what storylines were requested and states that the refinements did not relate to the "All Kinds/Living Jukebox" storyline at issue in this case (which was immediately rejected as not consistent with Pepsi's brand).  Gregory Dec. Ex. 39; SF ¶34.

**PLAINTIFF'S STATEMENT NO. 135**

Al devoted the weekend to making the refinements (pursuant to a separate agreement that Betty would be paid $5000 solely for the refinement services and not for any ownership rights) in time to meet PepsiCo's Monday morning deadline. Gregory Dec. Ex. 84 [Al Pascarelli, Jr. Tr] at 95:6-15.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 135**

No genuine issue of material fact exists.  Pepsi does not dispute that refinements were made (although unrelated to the All Kinds/Living Jukebox concept at issue in this case) and that Pepsi attempted to pay Betty $5,000.  The cited evidence does not support the statement "pursuant to a separate agreement that Betty would be paid $5000 solely for the refinement services and not for any ownership rights."

**PLAINTIFF'S STATEMENT NO. 136**

Nearly one month later, PepsiCo thanked Betty for its efforts but advised that it had decided on a different approach for the Super Bowl commercial and, therefore, would not be using any of the advertising stories or work Betty created for it. Gregory Dec. Ex. 28.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 136**

No genuine issue of material fact exists.  The evidence Betty cited does not support the fact that Pepsi advised Betty that it had decided on a different approach for the Super commercial.  Gregory Dec. Ex. 28.   Pepsi does not dispute that it decided not to use Betty's work and that it "narrowed down the ideas" for testing (to test only the ideas they were most interested in which did not include Betty's ideas).   Id.

**PLAINTIFF'S STATEMENT NO. 137**

Based on that representation, there was no reason for Betty to make a SOW to license or assign its Super Bowl work product to PepsiCo in consideration for fair market value compensation. All of the rights associated with Betty's creations, including the presented "All Kinds/Living Jukebox" storyline, remained Betty's property. Samay Dec. Ex. 23.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 137**

No genuine issue of material fact exists.  Betty provides no support for its conclusory opinion which are not fact let alone material fact.  There ultimately was no reason to contract with Betty because Pepsi had no obligation to do so and was not interested in Betty's concepts.  Pepsi disputes that all rights associated with Betty creations are owned by Betty and notes that Betty has previously admitted that Pepsi owned all right and title to certain Betty works.  See ¶102-103.

**PLAINTIFF'S STATEMENT NO. 138**

The relationship between PepsiCo and TMA is a long and close one; in fact, TMA originated within PepsiCo before being spun out years ago. Gregory Dec. Ex. 85 [Meyer Tr] at 11:3-12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 138**

No genuine issue of material fact exists. The evidence cited by Betty does not support a "long and close" relationship between TMA and Pepsi nor does it support that "TMA originated within Pepsi." Gregory Dec. Ex. 85 at 11:3-12. Betty's statement is its unsupported opinion. Rather, the testimony states: "[s]o Davie Brown as an entity has worked for Pepsi prior to merging with the Marketing Arm." Id.

**PLAINTIFF'S STATEMENT NO. 139**

Brad Groves is a TMA employee who spends considerable time working out of the PepsiCo offices, where he tends to the client relationship. Gregory Dec. Ex. 85 [Meyer Tr] at 19:9-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 139**

No genuine issue of material fact exists. The evidence cited by Betty does not support the statement. The cited evidence does not support Brad Groves "spends considerable time working out of the PepsiCo offices." Gregory Dec. Ex. 85 [Meyer Tr] at 19:9-24. In fact, the cited evidence does not provide any details whatsoever about where Brad Groves works. Id.

**PLAINTIFF'S STATEMENT NO. 140**

Betty delivered its "All Kind/Living Jukebox" pitch presentation orally and in writing before TMA presented its "Joy of Dance" idea. Gregory Dec. Ex. 79 [Segaran Tr] at 94:16-25, Ex. 80 [Danzi Tr] at 41:22-46:3, 55:12-15.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 140**

Pepsi does not dispute that Betty delivered its "All Kinds/Living Jukebox" presentation a few hours before TMA presented its "Joy of Dance" pitch.     Samay Dec. Ex. 5, 35; Gilbar Dec. at ¶9.

**PLAINTIFF'S STATEMENT NO. 141**

With its "Joy of Dance" slide deck, TMA proposed to have Christopher Walken dancing in different eras in a manner reminiscent of his Fatboy Slim video (www.youtube.com/wa t?v+wCDIYy FmgW8) with the mechanical execution of the commercial being that the camera will be "locked off and [as a] giant circulate set rotates left to right as if on a giant 'LAZY SUSAN.'" This is reinforced by the example TMA cited of Wes Anderson's AT&T commercial, where a stage is rotating behind the main character, whose wardrobe does not change and who does not navigate anywhere -- https: / /www. youtube .com/watch?v=fOAtZbgmAr4.  Samay Dec. Ex. 5, 35.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 141**

No genuine issue of material fact exists.  The Marketing Arm Pitch speaks for itself and its content cannot be changed by the characterizations of Betty.  Betty's statement is denied to the extent it misrepresents the content of the pitch deck.  The cited evidence does not support the

characterization that Betty has stated as fact.  Betty's statement suggests that the mechanical execution of Option 1 with Christopher Walken must have been mechanically executed by an example provided for Option 3 on the slide deck.  Samay Dec. Ex. 5, 35.  Betty's observations of the wardrobe and navigation of the Wes Anderson AT&T commercial are extraneous opinions that are immaterial to the claims at issue and which contradict the express example that The Marketing Arm provided which moves through different eras, transitions through different rooms and utilized changing wardrobe.

## PLAINTIFF'S STATEMENT NO. 142

The mechanical execution of the presented concept necessarily meant the hero character could not change his appearance (same as the Fatboy Slim video), could not navigate anywhere and that any scene changes would occur behind him as the set rotated - there would be no doorways used. The TMA slide deck repeatedly used the words "backdrop" and "rotated" to indicate that the hero character never navigated anywhere. This is reinforced by the example TMA cited of Wes Anderson's AT&T commercial, where a stage is rotating behind the main character and his wardrobe never changes and he does not navigate anywhere.  Samay Dec. Ex. 5, 35.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 142

No genuine issue of material fact exists.  The Marketing Arm Pitch speaks for itself and its content cannot be changed by the characterizations of Betty.  Betty's statement is denied to the extent it misrepresents the content of the pitch deck.  The cited evidence does not support the characterization that Betty has stated as fact.  Samay Dec. Ex. 5, 35 Betty's observations of the wardrobe and navigation of the Wes Anderson AT&T commercial are extraneous opinions that

are immaterial to the claims at issue and which contradict the express example that The Marketing Arm provided which moves through different eras, transitions through different rooms and utilized changing wardrobe..

## PLAINTIFF'S STATEMENT NO. 143

The TMA approach indicating in the initial deck is very different from the one Betty proposed and very different from the actual Super Bowl commercial. In the pitch, TMA proposed several time era pieces and backdrops as the set rotated and included that Walken would "crack open an ice-cold Pepsi in a vintage glass bottle", grab a "1960s-era Pepsi", be handed a "1970s era Pepsi bottle", have a "1980s Pepsi machine" in the background and in the final scene take a long refreshing drink from a "modern-day Pepsi."  Samay Dec. Ex. 5, 35.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 143

No genuine issue of material fact exists.  Betty's first sentence is not a fact at all but is merely an unsupported opinion.  The statement is not a fact let alone a material fact.  As to the second sentence, Pepsi does not dispute.  The Marketing Arm Pitch speaks for itself and its content cannot be changed by the characterizations of Betty.  Betty's statement is denied to the extent it misrepresents the content of the pitch deck.

## PLAINTIFF'S STATEMENT NO. 144

Jennifer Danzi, one of the PepsiCo employees who attended the November 6, 2015 pitch presentations, testified that PepsiCo employees are "trained to respect every agency's materials" and that it is "standard practice to turn a new page and write notes fresh so nobody can peek over and see what you've written about a previous presentation."  Gregory Dec. Ex. 80 [Danzi Tr] at 42:4-19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 144**

Pepsi does not dispute.

**PLAINTIFF'S STATEMENT NO. 145**

Notes taken by Jayanthi Raja Segaran, the individual leading the meeting; her notes of each presentation were not made on separate pages. Gregory Dec. Ex. 6.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 145**

Pepsi does not dispute that some pages of Ms. Segaran's notes reflect notes regarding more than one presentation. Any conflicts with Ms. Danzi's practices are meaningless and not material to any issue in this case. Moreover, Pepsi would point out that Ms. Segaran used a notebook (rather than loose pieces of paper) that could be closed so that others could not read her notes. Gregory Dec. Ex. 6. To the extent that Betty suggests that Ms. Segaran's notes could have been read by Mr. Groves (The Marketing Arm's representative who was in the room only for The Marketing Arm's pitch), such a suggestion is frivolous. The notes regarding Betty appear several pages away from the notes concerning The Marketing Arm and would not have been viewable during The Marketing Arm's presentation. Those notes consist of a total of twelve words written in small difficult to read cursive and reveal little about Betty's Pitch. Moreover, it was impossible for The Marketing Arm to even be in a position to review the notes until after it was already there presenting its original concept to Pepsi. Any suggestion of impropriety is denied and this is another example of Betty's desperate attempt to create the appearance of some wrong-doing where none exists.

**PLAINTIFF'S STATEMENT NO. 146**

Segaran's notes about "All Kinds/Living Jukebox" recite as highlights that there would be a "musical mash up of Joy of Pepsi", "all sorts of musical genres" and that it would be "continuous."  Gregory Dec. Ex. 6.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 146**

Pepsi does not dispute the first two quotations from the notes, but the third quotation indicated a "continuous shot".

**PLAINTIFF'S STATEMENT NO. 147**

The PepsiCo witnesses testified that the Company does not allow representatives of one agency to hear or see the presentation of another. Gregory Dec. Ex. 78 [Arbetter Tr] at 50-51; Ex. 80 (Danzi Tr] at 42:4-8.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 147**

No genuine issue of material fact.  Pepsi does not dispute that in some pitches, as was the case during the November 6, 2015 pitches, agencies were not able to hear or see the presentations of another.  Segaran Dec. ¶ 3.  Although, in certain commercial endeavors, it is fairly common to have collaborative joint pitches, as Ms. Segaran explained. Samay Dec. Ex. 64 at 91:4-16.

**PLAINTIFF'S STATEMENT NO. 148**

TMA was so concerned about PepsiCo's practices in this regard that Tom Meyer asked one of his attendees to let him know who was in the room because he knew an agency had been allowed by Pepsi representative, to hear and evaluate the creative efforts of others: ".Motive both

pitched ideas and got to sit in on everyone's presentations. Totally f***ed up. Also Matti Leshem was sitting next to Lou. Terrible."  Gregory Dec. Ex.54.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 148

Betty's statement is immaterial to resolution of the claims at issue in this case.  Betty has failed to cite any evidence that refutes that during the Super Bowl pitches on November 6, 2015, no other agencies were able to see or hear the pitches of another agency.  Samay Dec. Ex. Segaran at ¶ 3.  And, in certain commercial endeavors, it is fairly common to have collaborative joint pitches, as Ms. Segaran explained. Samay Dec. Ex. 91 at 79:4-16.   It is undisputed that agencies were not in the room during Super Bowl pitches or otherwise able to view those pitches.

## PLAINTIFF'S STATEMENT NO. 149

After the PepsiCo group met to compare notes at the end of the day Segaran e-mailed TMA that the Joy of Dance concept was a "cool idea" so it was "too long and complicated" but that TMA should work on refining it. Gregory Dec. Ex. 55 at p 6. Significantly, Segaran's contemporaneous notes, taken during the presentation, made no note of the ending of the spot even though that is the element the PepsiCo witnesses claim was central to their decision. Gregory Dec. Ex. 6.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 149

Pepsi does not dispute the first sentence and does not deny the content of Ms. Segaran's notes which are reflected in Gregory Dec. Ex. 6   Regarding Betty's second sentence, the statement is merely Betty's opinion imputing significance to the brief notes (14 words) Segaran jotted down and it is immaterial to any issue in this case..  Gregory Dec. Ex. 6.

## PLAINTIFF'S STATEMENT NO. 150

On Monday morning (November 9), Segaran expressed the hope that TMA's creative director (Marc Gilbar) had been able to connect with Arbetter over the weekend regarding revisions to the Joy of Dance spot.  Gregory Dec. Ex 45.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 150

The cited evidence is an email from the Monday night, November 9 not the morning as Betty described.  Gregory Dec. Ex 45.  Further, the evidence does not provide support that Segaran expressed hope that Gilbar connected with Arbetter *over the weekend*.  Id.  To the extent it is implied that Gilbar had been able to connect with Arbetter, his response was that he had not. Id.  The evidence in this case is undisputed that Ms. Gilbar and Mr. Arbetter did not speak during that time period.

## PLAINTIFF'S STATEMENT NO. 151

TMA submitted a revised slide indicating the use of an actual jukebox (Living Jukebox) and for the first time the use of doorways to bring the hero character (now proposed to be Pharrell) from room to room (like Betty's concept) but still did not employ the device of a continuous shot, still used different background performers in each scene and still venued one scene in a dark wet alley that hardly conveys joy.  Samay Dec. Ex 9.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 151

Pepsi disputes.  Betty's statement is not a statement of fact but rather describes Betty's unsupported extraneous and self-serving opinion of alleged similarities.  The revised TMA pitch makes no reference to the background performers being the same or different; and even in the

accused Super Bowl commercial at least some of the background performers are different in each room.  Samay Dec. Ex. 9.   The Marketing Arm Revised Pitch speaks for itself and its content cannot be changed by the characterizations of Betty.  Betty's statement is denied to the extent it misrepresents the content of the pitch deck.  The original Marketing Arm Pitch also had a hero character (Christopher Walken) moving from room to room (section to section of the globe).  None of the statements made by Betty are material to the issues before this Court.

## PLAINTIFF'S STATEMENT NO. 152

Later that day, Segaran e-mailed that PepsiCo wanted "[i]n each section, we would show the Pepsi Bottle and logo during its time."  Ex. 45. For TMA, Gilbar responded to the idea of featuring Pepsi product/signage from each era by saying "love that idea, we gotta do this."  Gregory Dec. Ex. 86.  These e-mails raises substantial questions about the authenticity of the original TMA deck since the idea of using different era-specific questions about the authenticity of the original TMA deck since the idea of using different era-specific props was already supposedly a part of the concept proposal (Samay Dec. Ex 5, 35) so there would have been no need or reason for Segaran to introduce it days later and have Gilbar treat it like a new idea.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 152

Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement No. 17.  Pepsi does not dispute the first and sentence sentences.  Pepsi disputes the second and third sentences.  The third sentence of Betty's statement it is not a fact at all but rather Betty's opinion for which it provides no record support.  TMA's original pitch included era-specific props, such as a vintage glass bottle (Samay Dec. Ex. 5, 35), but the pitch did not include showing the "Pepsi bottle and logo during its time" for *each* section.  Samay

Dec. Ex. 5, 35. The emails do not raise any questions regarding authenticity as previously explained. Betty could have – but did not – ask additional questions during discovery if it was really concerned with any authenticity concern.

## PLAINTIFF'S STATEMENT NO. 153

Even more dramatic proof of what appears to be the time-travelling TMA pitch deck is an e-mail Arbetter sent to Segaran on November 15, 2015 in which he complained that the concept lacked an active role for the brand and did not have some kind of twist or clever wink at the end. Gregory Dec. Ex. 76. The ending of the spot (which Segaran did not note in her notes (Gregory Ex. 6)) had supposedly been the factor PepsiCo loved - Arbetter described it as a "really clever and important device" that "popped" (Gregory Dec. Ex. 76) -- which makes the e-mails of ·a week later quite puzzling and raises questions about the authenticity of the original TMA pitch deck.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 153

Pepsi incorporates its response regarding authenticity from its Reply to Plaintiff's Response to Statement No. 17. There is absolutely no genuine question of fact as to the authenticity of the documents as many witnesses have confirmed their providence. If Betty wanted to know what Mr. Arbetter meant, it could have asked him at his deposition – but Betty did not. It could be a reference to the "clever wink" requested in the pitch brief where Pepsi asked for something at the end was "humorous." While The Marketing Arm's reveal of the Pepsi Globe was viewed as an "important device" that "popped", it was not humorous. SF¶36. Moreover, wanting more active exposure of the brand is a constant goal and Ms. Segaran wanted to ensure Pepsi bottling and logos were used in each scene.

**PLAINTIFF'S STATEMENT NO. 154**

Since PepsiCo embarked on the new round of collecting creatives, there was anxiety from its senior marketing management about the status of the commercial development. As Seth Kaufman, the person who needed to give sign-off, stated before the presentations that the commercial represented his "highest level of anxiety." Gregory Dec. Ex. 42. That anxiety naturally caused the need for the concept selection and development to run at an accelerated pace.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 154**

No genuine issue of material fact exists.  First, the expression of a Pepsi executive is not material to the claims at issue in the case.  Second, the evidence cited by Betty does not support that it caused an accelerated pace.  Gregory Dec. Ex. 42.  The testimony was that management might be using that expression to keep the pressure on the team to deliver quality work product. Samay Dec. Ex. 64 at 56:2-58:12.  Pepsi had plenty of time to conduct multiple pitches, select, test and produce the commercial.  Samay Dec. Ex. 91 at 33: 20-34:10.

**PLAINTIFF'S STATEMENT NO. 155**

E-mails between PepsiCo and TMA and internally within TMA indicated that TMA was having off-line "inside scoop" conversations with Rosen and that Rosen was giving "great" feedback that would "really elevate the spot." Gregory Dec. Ex 56.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 155**

Pepsi disputes.  Betty has failed to point to any evidence to characterize the conversations as "inside scoop."  In fact, the cited e-mails are from November 17.  Gregory Dec. Ex. 56.  In

addition, these statements are not material to any issue in the case. It is impossible for feedback provided on November 17th to have affected the presentations that were conceived, created and presented no later than November 6th and November 9th.

## PLAINTIFF'S STATEMENT NO. 156

While he tried to discount his own role, the PepsiCo witnesses credited Rosen (and his partner Neil Goldberg) with being an important part of the concept selection task. Gregory Dec. Ex. 79 [Segaran Tr] 33, 39.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 156

Nothing in the cited evidence characterizes Rosen (or his partner Neil Goldberg) as being "an important part" of the selection. Gregory Dec. Ex. 79 [Segaran Tr] 33, 39. Moreover, the role of Rosen is immaterial to resolution of the claims.

## PLAINTIFF'S STATEMENT NO. 157

Rosen's daughter works for Quietman, the company that handled production tasks for the creation of the Super Bowl commercial Gregory Dec. Ex. 81 [Rosen Tr] at 140:11-12, 149:15-17, 152:6-7, 11, 16-17, 20-21.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 157

The company that Rosen's daughter works for and projects is not material to the claims at issue.

## PLAINTIFF'S STATEMENT NO. 158

The improper sharing of information with TMA began even before TMA submitted its initial pitch. During the October 30, 2015 briefing conference call, Segaran indicated that

PepsiCo did not know and could not reveal the theme of the halftime show (Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 74:2-76:12; Ex. 79 [Segaran Tr] at 50:11-21; yet, an internal TMA e-mail on November 2, 2015 somehow indicated "[t]he Theme for the Halftime show is the History of Music -a celebration of the past and present in music." Gregory Dec. Ex 53.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 158**

No genuine issue of material fact exists.  Betty's statement is not material to resolution of the claims at issue.  There is no evidence what was known to the public on November 2, 2015 and no evidence that Pepsi was the source of the information known to The Marketing Arm. That information certainly has nothing to do with Betty or any of the claims in this case.

**PLAINTIFF'S STATEMENT NO. 159**

The totality of the evidence cited above is certainly sufficient to support the conclusion that PepsiCo and its agents were sharing information with TMA that it should have kept confidential.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 159**

Pepsi disputes.  This is clearly not a statement of fact.  It  is Betty's unsupported opinion. The statement is not a fact let alone a material one.  Nor has Betty even attempted to demonstrate how the fact that TMA knew the theme of the NFL's SuperBowl show could possibly indicate that Pepsi gave TMA any Betty information.

**PLAINTIFF'S STATEMENT NO. 160**

Like "All Kinds/Living Jukebox," PepsiCo employs a hero character Janelle Monáe in the commercial and, as she moved from room to room, the music genre, fashion, clothes and vibe

of the room changed -- with the doorways acting as the agent of change and with all the scenes stitched together to give the appearance of one seamless shot of a changing environment. Samay Ex. 34.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 160

Pepsi disputes.  Betty fails to provide any evidence to support its comparison to Betty's "All Kinds" pitch. Betty's pitch never mentions Janelle Monae, doorways acting as agents of change, or one seamless shot of a changing environment.  Pepsi's Commercial is very different from any of the protectable elements in Betty's Pitch and Pepsi's Commercial concepts were independently created by The Marketing Arm (and reflect Pepsi's own previously shared and aired commercial concepts).

## PLAINTIFF'S STATEMENT NO. 161

After airing the commercial during the Super Bowl, PepsiCo rebroadcast the Super Bowl commercial (and variations of it) nationally on both television and on the Internet many thousands of times such that it has been viewed literally hundreds of millions of times across numerous platforms.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 161

Pepsi disputes.  Betty fails to provide any evidence that supports the number of times the commercial has been viewed.  Moreover, Betty fails to provide any evidence that any variation of the Super Bowl commercial has ever been broadcasted.

**PLAINTIFF'S STATEMENT NO. 162**

When PepsiCo produced the Super Bowl commercial, it also created a second commercial which used the well-known "Joy of Cola" song in different musical styles. Gregory Dec. Ex. 79 [Segaran Tr] at 202:16-203:9, 204:10-205:7, 207:8-208:24; Ex. 85 [Meyer Tr] at 91:9-93:1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 162**

Betty's statement is not material.  The second version is not (and has never been) accused in this case and was never released.  D.I. 32; Samay Dec. Ex. 93 at 148:2-4.  The Marketing Arm also suggested using the Joy of Cola in different eras.  Ex. 5, 9, 35.  Pepsi's own pitch brief (provided to all agencies before they pitched) suggested using this song.  Ex. 1.

**PLAINTIFF'S STATEMENT NO. 163**

The PepsiCo plan was to use the second commercial for the remainder of the year, after the expiration of the short-term music licenses it had secured from Madonna and The Contours. Gregory Dec. Ex. 49; 79 [Segaran Tr] at 200:18-201:23.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 163**

Disputed.  While use of a the second version was an option that could have been used if licensing rights to the song used in the televised commercial expired, the second version is not accused in this case and was never released.  D.I. 32; Samay Dec. Ex. 93 at 148:2-4.  The Marketing Arm also suggested using the Joy of Cola in different eras.  Ex. 5, 9, 35.  Pepsi's own pitch brief (provided to all agencies before they pitched) suggested using this song.  Ex. 1.

**PLAINTIFF'S STATEMENT NO. 164**

The PepsiCo witnesses acknowledged the production of the second commercial and the fact that it aired extensively, but the Company did not provide a copy of it or any details about the number or location of airings of it. Gregory Dec. Ex. 79 [Segaran Tr] 202:16-203:9, 204:10-205:7, 207:8-208 :24; Ex. 85 [Meyer Tr] at 91:9-93:1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 164**

The evidence that Betty provides does not support the proposition that the second version aired extensively.  The accurate reading of the testimony supports that Ms. Segaran was unsure if the second version aired at all.  Gregory Dec. Ex. 79 at 202:16-203:9, 204:10-205:7, 207:8-208:24.  And, an accurate reading of Mr. Meyer's testimony does not reference the second version airing.  Gregory Dec. Ex. 85 at 91:9-93:1.  Moreover, Mr. Rosen, testified that the second version was not released and did not air.  Samay Dec. Ex. 93 at 148:2-4.  Moreover, the second version is not accused in this case and is immaterial to resolution of the case.  D.I. 32.  If Betty wanted a copy of the second version it could have moved to get a copy and it decided not to so.  It cannot now – half a year after discovery has closed – try to introduce it into the case.

**PLAINTIFF'S STATEMENT NO. 165**

With the two versions of the commercial it produced, PepsiCo copied both the "All Kinds" and the "Living Jukebox" concepts.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 165**

Pepsi disputes.  Betty's statement is merely a self-serving conclusory opinion that is unsupported by the evidence of record.

**PLAINTIFF'S STATEMENT NO. 166**

What was new and creative about Betty's work is the particular way in which all of the elements (hero character, same secondary characters in each scene, music/genre changes, wardrobe changes and set design changes that reflect those music changes) came together with the doorway being the agent of change and it all stitching together to appear as one continuous shot in one continuing environment. Samay Dec. Ex. 4, 21; Gregory Dec. Ex. 15:3-20:11, 21:13-27:3, 54:21-57:13,58:16-60:14, 62:3-65:5, 67:19-71:7.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 166**

Disputed.  Betty's statement describes the way in which certain elements came together in Betty's work, however, this is not in Betty's registered pitch.  Samay Dec. Ex. 4.  The copyrighted pitch speaks for itself.  Samay Dec. Ex. 4, 33.  To the extent Betty refers to oral statements, such statements are not part of Betty's registered copyright at dispute in this case. Moreover, Betty's statement is not one of fact, but it is merely a generalized opinion. Underlining the lack of creativity in Betty's work is the fact that prior Pepsi commercials utilized the broad concepts in Betty's Pitch and The Marketing Arm also independently created the concepts reflected in its original and revised pitches.

**PLAINTIFF'S STATEMENT NO. 167**

An example of how common elements that have been used before or are not alone protectable can be combined in a new way to create a new, interesting and protectable way is the iconic Budweiser commercial that uses elements of frogs, lily pads and a ribbit sound. Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 90:7-91: The sum can be greater than the parts and is more

important than how they can be broken apart. Gregory Dec. Ex. 77 [Al Pascarelli Tr] at 99:4-100:10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 167**

Betty's statement is not one of fact, but is a generalized opinion unsupported by record evidence. Moreover, Betty's statement is immaterial to resolution of this case. In any event, Pepsi disputed the implication. Any collection of frogs, lily pads and ribbiting will not constitute an infringing work. The popular Sugar Smacks commercials do not infringe, not do various documents involving frogs in their natural habitat. Here, Betty's claimed combination of ideas used in similar contexts presents nothing at all new.

**PLAINTIFF'S STATEMENT NO. 168**

As soon as Betty reached out to PepsiCo after the Super Bowl to complain about the misappropriation, PepsiCo acted hastily tried to cover its tracks given its lack of ownership of Betty's work. Gregory Dec. Ex. 10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 168**

Disputed. Betty's statement is not a statement of fact but is an unsupported opinion. Given that there is no Exhibit 10, it is unclear what evidence Betty is using to support its statement.

**PLAINTIFF'S STATEMENT NO. 169**

On December 28, 2015 at 3:50 pm, Betty submitted its $5000 estimate to PepsiCo for its time for working on the 2016 Super Bowl ad. Gregory Dec. Ex. 14.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 169**

Pepsi does not dispute that a work estimate was submitted. Ex. 14 is not that document. The statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 170**

PepsiCo initially requested that Betty invoice Direct Focus (Gregory Dec. Ex. 28) but Betty refused because PepsiCo is its client. Gregory Dec. Ex. 84 [Al Pascarelli,Jr. Tr] at 95:6-96:15

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 170**

Pepsi does not dispute that Betty refused payment by Direct Focus. It cannot confirm its motivations. The statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 171**

Betty reminded PepsiCo as early as December 7, 2015 that the fee it earned for the project was not in exchange for an assignment of ownership rights. Gregory Dec. Ex.12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 171**

Disputed. The cited evidence is dated December 28, 2015. Betty provides no evidence to support its statement. Moreover, the statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 172**

On December 28, 2015 at 3:52 pm, PepsiCo requested a formal estimate from Betty. Gregory Dec. Ex. 14.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 172</u>**

Pepsi does not dispute.  The statement is not material to any issue before this Court.

**<u>PLAINTIFF'S STATEMENT NO. 173</u>**

On December 28, 2015 at 4:48 pm, Betty submitted its formal estimate with a cover letter *to* Segaran stating: "We are happy to submit our estimate for the creative concept development and the requested second round of refinements related to the 2016 Super Bowl Ad. Pursuant to our phone conversation Betty will retain all rights, title and interest in its developed advertising concepts and ideas and in all variations and or derivative of them." The attached estimate bore a banner at the top of the page indicating "Work Estimate" and "Estimate #1228." Consistent with the cover letter, the Job Description stated: "Creative concept development and second round refinements relating to the 2016 Pepsi Super Bowl Ad. Estimate includes for time only. Betty will retain all rights title and interest in its developed concepts and ideas in all variations and derivatives of them." Gregory Dec. Ex 12.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 173</u>**

Pepsi does not dispute.  The statement is not material to any issue before this Court.

**<u>PLAINTIFF'S STATEMENT NO. 174</u>**

Super Bowl 50 is played on February 7, 2016.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 174</u>**

Pepsi does not dispute.

**PLAINTIFF'S STATEMENT NO. 175**

On February 10, 2016, Betty issued a demand letter to PepsiCo. Gregory Dec. Ex. 10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 175**

Pepsi does not dispute that Betty sent the letter reflected in Exhibit 10.  The statement is

not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 176**

On March 1, 2016 at 4:48 pm, Segaran forwarded the Betty estimate to Danzi. Gregory

Dec. Ex 13.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 176**

Pepsi does not dispute.  The statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 177**

On March 1, 2016, Danzi submitted Betty's estimate for payment.  Gregory Dec. Ex. 14.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 177**

Pepsi does not dispute.  The statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 178**

On March 4, 2016 at 2:01 pm, Danzi learned that Betty was not set up as a PepsiCo

vendor and she was requested to obtain tax documentation from Betty.  Gregory Dec. Ex. 16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 178**

Pepsi does not dispute. The statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 179**

On March 4, 2016 at 7:05 pm, Danzi responded "Shoot" because she had been told that Betty was upset, considering litigation and that she could not contact Betty. Gregory Dec. Ex. 16; Gregory Dec. Ex. 80 [Danzi Tr] at 97:11-98:8).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 179**

The characterization in the statement is disputed. The statement is not material to any issue before this Court.

**PLAINTIFF'S STATEMENT NO. 180**

On March 9, 2016 at 9:37 am, Danzi received a follow up request regarding the tax paperwork needed from Betty. Gregory Dec. Ex. 17.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 180**

Pepsi disputes the materiality of this statement.

**PLAINTIFF'S STATEMENT NO. 181**

On April 21, 2016, Segaran was included on privileged communications initiated by Arbetter regarding threatened Betty Litigation. Gregory Dec. Ex. 87.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 181**

Pepsi disputes the materiality of this statement.

**PLAINTIFF'S STATEMENT NO. 182**

In March or April 2016, Segaran instructs Danzi to pay Betty and Danzi thereafter created a phony Betty invoice by doctoring the header banner of the Betty estimate, adding fake

purchase order and invoice numbers. She deleted the statement at the bottom of the Betty estimate that "[a]bove information is not an invoice and only an estimate for the services that have been provided." Gregory Dec. Ex. 18.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 182

Disputed. Pepsi disputes the materiality of this statement. Second, this statement is unsupported by the record evidence and Betty has failed to provide any support for its characterization as a "phony Betty invoice" with "fake purchase order and invoice numbers." Moreover, Ms. Danzi testified that she created the invoice to get Betty paid based on internal policies of the Pepsi finance department. Samay Dec. Ex. 92 at 103:10-24.

## PLAINTIFF'S STATEMENT NO. 183

On April 25, 2016, PepsiCo initiated $5000 ACH payment to Betty referencing the phony invoice and attaching a purchase order titled "Betty SB Ad Creative Concept" and General Terms and Conditions including a section addressing "Ownership" of all created intellectual property. Gregory Dec. Ex. 37.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 183

Pepsi disputes the materiality of the statement. Second, Betty has failed to provide any support for its characterization as a "phony invoice." Pepsi admits that the Purchase Order contains its standard terms that Betty has received before and assented to.

## PLAINTIFF'S STATEMENT NO. 184

On April 27, 2016, Betty returned $5000 to PepsiCo to avoid any suggestion that it sold any intellectual property rights to "All Kinds/Living Jukebox" to PepsiCo. Gregory Dec. Ex. 40.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 184**

Pepsi does not dispute that Betty returned the paid check. Betty fails to provide any evidence as to the motivation for Betty returning the $5000 to Pepsi. Apparently, it returned the money it requested on advice of counsel to support a litigation position.

**PLAINTIFF'S STATEMENT NO. 185**

The Britney Spears "Now and Then" commercial did not employ the device of doorways as the agents of change for stitching together scenes to create the appearance of one continuous shot of a changing environment, used different cast members in each scene; it created a distinct and very different feel. Samay Dec. Ex. 34.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 185**

The statement is not material to any issue before this Court. The elements used in Now and Then are relevant to the claim that Betty owns those ideas and because such previously used ideas cannot serve as the basis for an infringement finding. Betty merely lists unsupported extraneous opinions regarding the commercial. The extraneous statements of Betty are not material to resolution of the case. Moreover, the accused commercial also includes use of some different background cast members between scenes and Betty's work does not disclose the list of ideas. Samay Dec. Ex. 34.

**PLAINTIFF'S STATEMENT NO. 186**

The "Bottle Pass" spot provides a very different feel from the Super Bowl commercial. Among other things, there was no hero character, the cast changes, it does not take place in a

singular space, it does not use doorways as the agents of change and there was no change of

1nusic genres or wardrobes for each era depicted.  Samay Dec. Ex. 34.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT NO. 186**

Disputed.  Betty merely lists unsupported extraneous opinions regarding the commercial.

The extraneous statements of Betty are not material to resolution of the case.  Moreover, the

accused commercial also includes use of some different background cast members between

scenes and Betty's work does not disclose the list of ideas..  Samay Dec. Ex. 34.

Dated:  May 15, 2019                            LERNER, DAVID, LITTENBERG,
                                                 KRUMHOLZ & MENTLIK, LLP

                                                By: */s/ Scott R. Samay*

                                                Scott R. Samay

                                                ssamay@lernerdavid.com
                                                Natalie S. Richer (*pro hac pending*)
                                                nricher@lernerdavid.com
                                                Elizabeth Lafferty (*pro hac pending*)
                                                elafferty@lernerdavid.com
                                                600 South Avenue West
                                                Westfield, NJ 07090-1497
                                                (908) 654-5000


                                                WINSTON & STRAWN LLP

                                                Michael S. Elkin
                                                melkin@winston.com
                                                Emily Ellis
                                                eellis@winston.com
                                                200 Park Avenue
                                                New York, New York 10166-4193
                                                (212) 294-6700

                                                *Attorneys for Defendant, PepsiCo, Inc.*